[S. F. No. 2031. In Bank.—May 16, 1900.]

GERMANIA TRUST COMPANY, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

128 589
a128 610
a128 616

TAXATION—SECURED RAILROAD BONDS—DOUBLE TAXATION—CONSTITUTIONAL LAW.—Under the provisions of the constitution making debts secured by mortgage or deed of trust an interest in the encumbered property for the purposes of taxation, and that as to railroad and other *quasi* public corporations, in case of debts so secured, their property shall be assessed at its actual value, without deduction on account of the debt secured thereon, bonds of a railroad corporation secured by mortgage of its property within this state are not assessable for taxation to the holders of such bond. [Van Dyke, J., dissenting.]

ID.—RELATION OF RAILROAD BONDS TO SECURITY.—Though a railroad bond in its usual form is not identical with the mortgage by

which its payment is secured, the bond and mortgage concur to constitute an obligation affecting the encumbered property, and the holder of each bond issued has a corresponding equitable interest in the mortgage. A recorded railroad mortgage creates no lien until some of the bonds to which it relates are sold, pledged, or otherwise used, when, in a proper case, it may operate retrospectively as of the date of its execution or record.

ID.—NATURE OF DOUBLE TAXATION—IDENTITY OF PERSONS ASSESSED NOT REQUIRED.—The fact that the holder of railroad bonds secured by mortgage is taxed thereon but once does not necessarily prevent the taxation from being double. Double taxation does not necessarily consist in assessing the same property twice to the same person, but may consist in requiring a double contribution to the same tax on account of the same property, though the assessments are to different persons.

ID.—EXCEPTION OF RAILROAD BONDS FROM TAXATION—CONSTITUTIONALITY OF CODE PROVISION.—The amendment of 1895 to section 3617 of the Political Code, excepting the bonds of railroad and other *quasi* public corporations from the definition of property liable to taxation, is constitutional and valid.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion.

Garber, Creswell & Garber, and Smith & Pringle, for Appellant.

Double taxation is unconstitutional in this state. (Const., art. XIII, sec. 1; *Savings etc. Soc. v. Austin*, 46 Cal. 483, 495; *People v. Hibernia Bank*, 51 Cal. 243; 21 Am. Rep. 704; *Burke v. Badlam*, 57 Cal. 600; *Spring Valley W. W. v. Schottler*, 62 Cal. 112; *San Francisco v. Mackey*, 21 Fed. Rep. 539; *San Francisco v. Anderson*, 103 Cal. 69; 42 Am. St. Rep. 98; *Security Savings etc. Co. v. Hinton*, 97 Cal. 222; *McHenry v. Downer*, 116 Cal. 28.) The constitution exempts from taxation the bonds of railroads and other *quasi* public corporations. (Const., art. XIII, sec. 4; *Central Pac. R. R. Co. v. Board of Equalization*, 60 Cal. 59; *Railroad Tax Cases*, 13 Fed. Rep. 728, 735; *County of Santa Clara v. Southern Pac. R. R. Co.*, 18 Fed. Rep. 391.) Legislative acts are to be construed against double taxation, and all presumptions are against it. (Cooley on Taxation; *Tennessee v. Whitworth*, 117 U. S. 129, 137; *American Bank v. Mumford*, 4

R. I. 482; *Savings Bank v. Portsmouth*, 52 N. H. 29; *Osborn v. New York etc. R. R. Co.*, 40 Conn. 494; *Montgomery Co. Board of Revenue v. Montgomery Gas Light Co.*, 64 Ala. 273; 1 Desty on Taxation, 199; Burroughs on Taxation, sec. 49.) The exemption of railroad bonds by the Political Code is valid and effective legislation. (Pol. Code, secs. 3608, 3617; *Burke v. Badlam*, 57 Cal. 602; *Security Savings etc. Soc. v. Hinton, supra; McHenry v. Downer, supra.*)

Tirey L. Ford, Attorney General, William Abbott, Deputy Attorney General, Franklin K. Lane, City and County Attorney, and W. I. Brobeck, Assistant, for Respondent.

In view of the language of the constitution (Const., art. XIII, sec. 1) and weight of authority and reasoning in the courts of other states, the reasoning of Justice Crockett in *Savings etc. Soc. v. Austin*, 46 Cal. 483, and the case of *People v. Hibernia Bank*, 51 Cal. 343, 21 Am. Rep. 704, should be overruled, and the doctrine of *Mackay v. San Francisco*, 113 Cal. 392, should be adhered to and extended, so as to hold that the taxation of bonds of railroad corporations, which have been decided to be not an interest in its property (*Central Pac. R. R. Co. v. Board of Equalization*, 60 Cal. 35), is not unconstitutional or invalid. "Bonds" are taxable by the very terms of our constitution. (Const., art. XIII, sec. 1; *State v. Carson City Savings Bank*, 17 Nev. 146-59; *People v. Worthington*, 21 Ill. 171, 177; 74 Am. Dec. 86; *Lamar v. Palmer*, 18 Fla. 147; *Alabama etc. Ins. Co. v. Lott*, 54 Ala. 499; *Judge v. Spencer*, 15 Utah, 242; *New Orleans v. Mechanics' etc. Ins. Co.*, 30 La. Ann. 876; 31 Am. Rep. 232; *Cook v. Burlington*, 59 Iowa, 251; 44 Am. Rep. 679; *McGregor v. Vanpel*, 24 Iowa, 436; *Detroit Common Council v. Board*, 91 Mich. 78; *Taggart v. Board*, 71 Mich. 16-22; *Jefferson Co. Sav. Bank v. Hewitt*, 112 Ala. 546; *Appeal Tax Court v. Rice*, 50 Md. 319; *Davidson v. New Orleans*, 96 U. S. 97; *State v. Jones*, 24 Minn. 251; Burroughs on Taxation, 49, 50, 59; Walker on Taxation, 49; Cooley on Taxation, 204; *State Tax on Foreign-held Bonds*, 15 Wall. 326; *Augusta Bank v. Augusta*, 36 Me. 257; *Goldgart v. People*, 106 Ill. 25; *Kirtland v. Hotchkiss*, 100 U. S. 491; *Catlin v. Hull*, 21 Vt. 152; *Poppleton v. Yamhill County*, 8 Or. 338; *State v. Collectors*, 25 N. J. L. 315.) Presumptions are against

exemptions from taxation. (*People ex rel. etc. v. Davenport*, 91 N. Y. 585, 586; *Providence Bank v. Billings*, 4 Pet. 514; *People ex rel. etc. v. Commissioners of Taxes*, 82 N. Y. 464, 465; 95 N. Y. 556, 557; *Fletcher v. Oliver*, 25 Ark. 294, 295; *Morrison v. Larkin*, 26 La. Ann. 702.)

BRITT, C.—In this cause the court below held on demurrer to the plaintiff's complaint that the same failed to state facts sufficient to constitute a cause of action; plaintiff declining to amend, there was final judgment for defendant. The purpose of the action, as disclosed by the complaint, is to recover money paid by plaintiff under protest to the assessor of the city and county as taxes for the fiscal year to end June 30, 1900, upon several bonds owned by plaintiff, of the par value of one thousand dollars each, issued by the North Pacific Coast Railroad Company, a corporation owning and operating a railroad wholly within this state, but in more than one county; which bonds are secured by mortgage or deed of trust of and upon all the real and personal property of said railroad company. The property mortgaged for the payment of the bonds has been, or will be, assessed for purposes of taxation to the railroad company at its full cash value, without deduction of the debt secured thereon. The question for decision is whether such bonds are assessable for purposes of taxation to the owner of them. If they are thus taxable, the judgment of the court below is right; otherwise, it is erroneous.

Article XIII of the constitution of this state has for its subject "Revenue and Taxation." By section 1 thereof "bonds," without any descriptive qualification, are named among the several species of property subject to taxation "in proportion to its value, to be ascertained as provided by law." Section 4 of said article, so far as necessary to be stated, is as follows: "A mortgage, deed of trust, contract, or other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby. Except as to railroad and other *quasi* public corporations, in case of debts so secured, the value of the property affected by such mortgage, deed of trust, contract, or obligation, less the value of such security, shall be assessed and taxed to the owner of the property, and the value of such se-

curity shall be assessed and taxed to the owner thereof, in the county, city, or district in which the property affected thereby is situate." By section 10 of the same article it is provided that: "The franchise, roadway, roadbed, rails, and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization, at their actual value." Railroad property not specified in section 10 is assessed for taxation by the local assessor of the county, town, or other taxing district where it is situated. (*San Francisco v. Central Pac. R. R. Co.*, 63 Cal. 467; 49 Am. Rep. 98.) There seems to be no serious contention that the bonds in question here are not obligations by which a debt is secured within the meaning of the first clause of said section 4 of article XIII; nor could that position be maintained successfully. It is true that a railroad bond in the usual form is not identical with the mortgage by which its payment is secured; but the bond and the mortgage concur to constitute an obligation affecting the encumbered property; each bond issued carries with it in the hands of the holder a corresponding equitable interest in the mortgage. The mortgage alone, although it be formally executed and recorded, yet of itself evidences no debt and creates no lien until the bonds or some of them to which it relates are sold, pledged, or otherwise used, when it may in a proper case operate retrospectively as of the date of its execution or record. These propositions are elementary. (See Short on Railway Bonds, 43-46; Jones on Corporate Securities, sec. 181; *Wade v. Brewing Co.*, 10 Wash. 284; *People v. Eastman*, 25 Cal. 601, 603.)

The history of the plan for the taxation of secured credits in the present constitution is well known. The constitution of 1849 was understood and interpreted to be prohibitive of the taxation of all credits, including those secured by mortgage of property, on grounds which need not be now investigated nor here rehearsed, further than to say that the taxing of credits was considered to be double taxation and contrary to the constitutional requirement that taxation should be equal and uniform. (*People v. Hibernia Bank*, 51 Cal. 243; 21 Am. Rep. 704; *Bank of Mendocino v. Chalfant*, 51 Cal. 369.) The constitution of 1879 was designed to change the rule existing at the

time of its adoption; it makes taxable, in the manner prescribed by its own terms, all credits secured by mortgage; the understanding, however, has always been that double taxation is no part of the means by which this result is to be accomplished; in a decision rendered little more than a year after the instrument took effect, and thus valuable as contemporaneous exposition, it was said that "not only does the language of the constitution neither require nor permit double taxation, but we think it may be safely said that neither the framers of the instrument, nor those who ratified it, ever supposed that under its provisions there could be any such thing; for both in the debates on the floor of the convention which framed it, and in the arguments of those who advocated its adoption before the people, are to be found repeated disclaimers of any such intention." (*Burke v. Badlam*, 57 Cal. 594, per Mr. Justice Ross.) And to similar effect are *San Francisco v. Anderson*, 103 Cal. 69, 42 Am. St. Rep. 98, and several other cases.

We are, therefore, in the present case to understand the provisions of the constitution as directed to the purpose of securing to the state a revenue from such bonds equal to that derived from any other property of the same value, and at the same time avoiding the double taxation of any property. Holding in view both these intents, the scheme and plan of the constitution seems to be easy of apprehension: "A mortgage, deed of trust, contract, or other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby." This declaration is comprehensive; no class of secured obligations is excepted from it; such obligations being made an interest in the affected property for the purposes stated, necessarily the property affected includes, for the same purposes, the obligations which affect it, as well as the remaining interest of the debtor. The form which credits secured by mortgage should take for the purposes of taxation being thus fixed as an interest in the affected property, it remained to determine from whom payment of the tax on the aggregate of values comprised in the property should be exacted; as to credits secured on the property of individuals and strictly private corporations, the burden is divided and adjusted by assessing the interests sep-

aratcly—the owner of the secured credit being taxed on its value, and the owner of the encumbered property being taxed on the value thereof remaining after deducting the amount assessed to the secured creditor. But in the case of credits secured on the property of "railroad and other *quasi* public corporations" no deduction from the value of the property is allowed on account of the indebtedness; the whole of the property—precisely commensurate with the interests of both debtor and creditor—is assessed to such corporation; and thus, as an interest in the affected property (which it is declared to be for this purpose by the first clause of section 4) the secured obligation is assessed, and the tax is paid by the debtor corporation. It necessarily follows that to assess and tax the obligation again to the holder thereof, as if it were an unsecured credit, would be to tax the same property twice, which in this instance, at least, is made impossible by the terms of the constitution; for, since the secured obligation is for purposes of assessment and taxation to be deemed and treated as an interest in the property affected, it cannot be taxed except as such interest.

It is no answer to say that if the bonds are assessed to the holder, and he pays the tax on them, *he* is taxed only once; for double taxation may consist in requiring a double contribution to the same tax on account of the same property, even though the assessments are to different persons. (Cooley on Taxation, 2d ed., 225; *San Francisco v. Fry*, 63 Cal. 470.) This is illustrated in *Burke v. Badlam, supra,* where it was held that when all of the property of a corporation is assessed for taxation, the shares of its stock, which merely represent interests in the corporate property, are not themselves taxable to the stockholder; and that when moneys deposited in a savings bank are assessed to the bank they cannot be also assessed to the depositors. (Compare *McHenry v. Downer,* 116 Cal. 20.) So, in the case before us, the bonds being made, for the purpose of taxation, an interest in the property on which they are secured, when this is taxed at its actual value, without deduction of the value of the security, the bonds are taxed in the only way the constitution allows them to be taxed. This view of the case receives some corroboration from the practice of the revenue officers of the state; so far as we are advised, bonds such as those here in-

volved have not, from the time the constitution went into effect until now—some twenty years—been assessed to the holders thereof. The legislature has been of the same opinion; by the amendment of section 3617 of the Political Code (Stats. 1895, p. 310), the bonds of railroad and other *quasi* public corporations are, as such, excepted from the definition of property liable to taxation; counsel have assailed this enactment as unconstitutional, but, in our opinion, for the reasons already indicated, it would have been at variance with the constitution if it had provided otherwise.

There may have been various reasons why no independent taxation of credits secured on the property of railroad corporations was provided for. At the time the constitution was framed and adopted it was supposed that the property of such corporations was commonly mortgaged to an amount equal to or greater than its value; the difficulty or impossibility of reaching their mortgage bonds when held, as is frequently the case, in the hands of numerous owners dispersed over the world, may have made it seem politic and convenient to fix them as an interest in the property; by taxing the property without the deduction (on account of the debt) allowed to natural persons the state could lose no revenue, nor could railroad property in any wise escape taxation—both of which contingencies were doubtless designed to be avoided; the plan also was not open to the imputation of an attempt at double taxation. (See the argument of counsel for the state in *California v. Central Pac. R. R. Co.*, 127 U. S. 18.)

The decision in *Mackay v. San Francisco*, 113 Cal. 392, in no way conflicts with what is held here; that case related to bonds of a railroad corporation of Arizona secured on property situated in that territory, which bonds were owned in this state; it was held that they were taxable here; no argument is required to show that securities which affect only property without this state are not the subject of our laws relating to the taxation of securities which are a lien on, and an interest in, property within the state. A dictum from the opinion in the case of *Central Pac. R. R. Co. v. Board of Equalization*, 60 Cal. 59, is pressed upon our attention. In that case it was in controversy, among other things, whether the railroad company was

entitled to have deducted from the assessment of its property for local taxation the amount of a first mortgage imposed by the laws of the United States. That matter is covered by the terms of the constitution excepting railroad corporations from the provision for deduction allowed to other mortgagors, and the question for decision was merely whether this exception was violative of the fourteenth amendment to the constitution of the United States. It was held that the exception was not in conflict with said amendment, but the learned justice delivering the opinion, having referred to section 4 of article XIII of the state constitution, remarked thereon: "Reading the whole section together, it seems very plain that, as to mortgages, deeds of trust, contracts, or other obligations secured upon the property of railroad and *quasi* public corporations, they should not be deemed and treated as an interest in the property affected by them 'for the purposes of taxation.'" The remark was wholly unnecessary to the decision, but was correct enough in the sense its author probably designed it to convey, and as it applied to the facts of that case; it was true that for the purpose of reducing the assessment to the railroad company the mortgage could not be regarded as an interest in its property, and in the very next sentence the court enlarged upon that conception, saying that: "Under the constitution of this state the property of such corporation is subject to assessment and taxation without deduction of the amount of any mortgage or like lien thereon." The state was without power, even if it had attempted the exercise thereof, to make the mortgage existing in favor of the United States an interest in the property for the purpose of imposing a tax on such interest. We cannot allow to any such casual observation the effect of setting aside what the constitution explicitly affirms, viz., that for purposes of assessment and taxation an obligation by which a debt is secured shall be deemed and treated as an interest in the affected property. The judgment should be reversed, with directions to the court below to overrule the demurrer to the complaint.

Chipman, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with directions to the court below to overrule the demurrer to the complaint.

McFarland, J., Temple, J., Harrison, J.

GAROUTTE, J., concurring.—I concur in the views and conclusion of the court promulgated through Mr. Commissioner Britt. I more willingly concur in that conclusion in view of the fact that a contrary judgment would absolutely deprive all residents of this state of the opportunity of buying bonds of the character here involved. Nonresidents could well afford to pay an added sum for them to the amount of the tax. And for this reason it would necessarily result that all of these various classes of bonds would be purchased and held in London, Frankfort, and other foreign money centers, and the state thereby deprived of the circulation of a great sum of money, which, if passing and repassing in business channels here, would add greatly to our prosperity.

VAN DYKE, J., dissenting.—I dissent. Prior to the constitutional convention of 1878-79 it had become a custom for the lenders of money on mortgages to exact a stipulation that the borrower should pay all the taxes that might be levied on the mortgage or debt secured thereby. A vast amount of litigation grew out of this custom, and the tax was stoutly resisted. "As a consequence of various decisions of the supreme court in this litigation, all money loaned upon mortgage security escaped taxation, and the owner of the land mortgaged was compelled to pay more than his share of the expenses of government." (*Hewitt v. Dean,* 91 Cal. 12.)

One of the controlling purposes of the people of this state, in calling that convention, and by the adoption of the constitution framed by such convention, was to compel the creditor class to bear a fair share of the burdens of taxation; and, at the same time, to relieve, as far as possible, the debtor class from bearing more than its share of such burdens. This is manifest, not only from the debates in the convention, but by public discussions, both by speech and in the press, before, at the time, and after the holding of such convention.

The scheme of revenue and taxation in the present constitution carries out such intention of the people perhaps as well as can be done. No plan, however, that may be devised will, in practice, operate entirely equal and uniform. This fact was realized by members of the convention, as the debates will show. Hence, the clause in the constitution of 1849 declaring that "taxation shall be equal and uniform throughout the state" was omitted from the present constitution; and section 1 of the article on revenue and taxation, as first reported by the committee, declaring that "all taxes shall be uniform upon the same class of subjects," was, after debate, stricken out. The reason for this action by the convention is stated by Judge Campbell as follows: "I think this debate, so far as it has gone, has pretty clearly demonstrated the necessity for striking out this first section entirely, and leaving no substitute for it. All the trouble we have had in this state in regard to taxation has arisen out of the construction of these words, 'equal and uniform taxation,' in the old constitution, by the supreme court." (Debates, vol. 2, p. 840.)

The whole argument in support of the exemption from taxation of bonds secured by mortgage on railroads and other *quasi* public corporations is that the property on which the security exists is assessed and taxed without deducting the amount of the security, as provided in case of real property other than that owned by such corporations; and it is claimed that this would not be equal and uniform taxation. However desirable it may be that taxation should be absolutely equal and uniform, such a result in practice is generally unattainable, and the present constitution, therefore, does not exact this rigid condition in the levying of taxes.

That the constitution does not allow a rebate or deduction of the secured debt of railroads and other *quasi* public corporations, as in other cases, is quite clear; and the reason for making this distinction is rather from necessity than a disposition to make an unjust discrimination against such corporations.

Delegate Edgerton, chairman of the committee on revenue and taxation, in the course of debate remarked: "I have been asked by three or four gentlemen since the convention took a recess what was the meaning of this exception, 'except as to

railroads and other *quasi* public corporations.' Why are these corporations exempted? It was made to appear to the committee on revenue and taxation that the railroads are in debt in very large sums, in the form of bonds, and that those bonds were held in Europe, New York, and other places outside of this state. Now, sir, under the decision of the supreme court of the United States—the decision referred to by the gentleman from Los Angeles—it has been held that these bonds are not within the jurisdiction of the state, and cannot be taxed. So, unless this exception is made, the railroads will have a good thing of it. When the assessor came to assess them, they will deduct the amount of these bonds from the value of their property here, and, the bonds being out of the reach of the state, the state would get very little tax." (Debates, vol. 2, p. 908.) Further on in the debate on this subject, other delegates gave similar reasons for the distinction as made.

The whole purpose of the scheme allowing a rebate was to relieve the borrower from paying taxes on more than the value of his interest in the property covered by the security, wherever that could be done without exempting the creditor from paying taxes on his property, to wit, the credit or chose in action secured. And it was thought to allow such rebate to railroad and other *quasi* public corporations, under the circumstances, would be to deprive the state of a large amount of revenue, for the reasons stated, that generally such creditors are beyond the reach of taxation in this state.

The first section of the article on revenue and taxation, as adopted, declares that all property in the state shall be taxed in proportion to its value, and then defines the word "property," which includes credits, bonds, dues, and other matters and things, real, personal, and mixed, capable of private ownership. And nothing can be found in the constitution or in the debates even intimating a purpose of exempting from taxation credits, whether evidenced by note or bond, secured or unsecured.

Because railroads and other *quasi* public corporations are required to pay taxes on the whole value of their property, without deduction, as in other cases, does not affect or concern the creditor or holder of the security. He has no ground for com-

plaint whatever, although the debtor might have. Holders of
bonds of such corporations within this state are subject to taxa-
tion the same as the holder of a promissory note. Where a party
purchasing property of a given value pays half the purchase
price with money borrowed on his unsecured note he, in fact,
holds but a half interest; still he is required to pay taxes upon
the full value of the property, which represents the money of
both borrower and lender. The creditor, in such case, would
have just as much reason for being exempted from paying taxes
on his credit, which had thus been assessed and taxed in the
property, as the holder of the bonds under consideration.

But the state has the right to make distinctions, even ar-
bitrarily, in the mode and manner of taxation, although in this
case there appeared good reason for the distinction.

In *McCulloch v. Maryland*, 4 Wheat. 428, Chief Justice Mar-
shall, speaking for the court, says: "It is admitted that the
power of taxing the people and their property is essential to
the very existence of the government, and may be legitimately
exercised on the objects to which it is applicable, to the utmost
extent to which the government may choose to carry it. The
only security against the abuse of this power is found in the
government itself." And in *State Tax on Foreign-held Bonds*,
15 Wall. 300, it is said: "Unless restrained by the provisions
of the federal constitution, the power of the state as to the
mode, form, and extent of taxation is unlimited where the sub-
jects to which it applies are within her jurisdiction." And in
*Kirtland v. Hotchkiss*, 100 U. S. 491, the supreme court of the
United States says: "It may, therefore, be regarded as the estab-
lished doctrine of this court, that so long as the state, by its
laws prescribing the mode and subject of taxation, does not
entrench upon the legitimate authority of the Union, or violate
any right recognized or secured by the constitution of the
United States, this court, as between the state and its citizens,
can afford him no relief against state taxation, however unjust,
oppressive, or onerous."

Many cases might be cited where discrimination is made in
the imposition of taxes and whether such discrimination is in
all cases proper is a question of policy with which the court
has no right to interfere. When the constitution was adopted,

it was thought advisable to exempt growing crops from taxation. By subsequent amendment, fruit and nut-bearing trees under the age of four years from the time of planting in orchard form and grape vines under the age of three years from the time of planting in vineyard form, as well as some other species of property, have been added to the list of exempted articles.

It goes without saying that the more subjects exempted from taxation the greater must be the rate of taxation as to those taxable. Where, therefore, a vast amount of capital invested in notes, bonds, and other securities is exempted from or escapes taxation, the more onerous becomes the burden of taxation to those who are not so fortunate as to be creditors, but who may own other species of property. The extent to which the exemption of various forms of credits had been carried under the decisions of the court, as already stated, had become a crying evil, and it was the fixed purpose of the people of this state, as declared in the present constitution, to reach and tax every species of credits, whether secured or unsecured. If it were necessary, which it is not, to resort to the debates for the purpose of construing the language of the constitution in this particular, such purpose would become most manifest.

Whether, however, the scheme adopted has worked as satisfactorily as its friends anticipated may well be doubted; but this does not change the fact that the purpose to tax credits of every kind is firmly fixed in the constitution, and the people of the state had the right and power to put it there.

The case of *Kirtland v. Hotchkiss, supra,* involved the taxation of credits, and the court say: "The question does not seem to us to be very difficult of solution. The creditor, it is conceded, is a permanent resident within the jurisdiction of the state imposing the tax. The debt is property in his hands, constituting a portion of his wealth, from which he is under the highest obligation, in common with his fellow-citizens of the same state, to contribute to the support of the government whose protection he enjoys. This debt, although a species of intangible property, may, for the purposes of taxation, if not for all others, be regarded as situated at the domicile of the creditor. It is none the less property because its amount and

maturity are set forth in a bond. That bond, wherever actually held or deposited, is only evidence of the debt, and, if destroyed, the debt—the right to demand payment of the money loaned, with the stipulated interest—remains. . . . . The debt, then, having its *situs* at the creditor's residence, both it and he are, for the purposes of taxation, within the jurisdiction of the state. It is, consequently, for the state to determine, consistently with its own fundamental law, whether such property owned by one of its residents shall contribute by way of taxation, to maintain its government. Its discretion in that regard cannot be supervised or controlled by any department of the federal government, for the reason, too obvious to require argument in its support, that such taxation violates no provision of the federal constitution."

The railroad cases passed upon by Justice Field and Judge Sawyer in the United States circuit court (13 and 18 Federal Reporter) did not determine the question under consideration here. They were brought by the railroads, and not by the bondholders, and the grievance, on the part of the complainants, was not only as to the amount assessed against their property, but also as to the mode and manner of making such assessment. In the later case of *Reinhart v. McDonald*, 76 Fed. Rep. 405, the judge of the United States circuit court, in speaking of the provision of our state constitution under consideration, says: "These provisions seem to need no interpretation. The first section is so comprehensive that it can only be defined in terms of itself, and it certainly embraces—as it exactly and carefully says it embraces—all matters and things 'capable of private ownership.' " And in *McCoppin v. McCartney*, 60 Cal. 371, this court says: "The plain intent of the new constitution is to subject to taxation classes of property previously exempt. That one of the new classes consists of credits, secured or unsecured, no more violates any contract or vested right of the creditor than would a provision by which for the first time the owner of any tangible property should be taxed upon its value."

In *Central Pac. R. R. Co. v. Board of Equalization*, 60 Cal. 35, this court, speaking through Mr. Justice McKinstry, after quoting the section in the constitution in question, says: "Reading the whole section, it seems very plain that as to mortgages,

deeds of trust, contracts, or other obligations, secured upon the property of railroads and other *quasi* public corporations, they should not be deemed and treated as an interest in the property affected by them for the 'purposes of taxation.' " Referring to the mode of assessing and taxing railroads and other *quasi* public corporations, the court says: "The claim is that thus to impose upon railroad corporations, operated in more than one county, a tax upon the full value of their property, while upon owners of other property is imposed a tax only upon the full value of their property after deducting the amount of mortgage and other like liens, is to deny to such corporations the 'equal protection of the laws,' and, therefore, violative of the fourteenth amendment of the constitution of the United States." But, after reviewing a number of cases decided by the supreme court of the United States, in reference to the power of states over the subject of taxation, this court held that the objections to the plan of assessment and taxation prescribed in our constitution were not well founded.

It is intimated, however, that the portion of the opinion declaring that railroad securities were not to be treated as an interest in the property affected by them for the purposes of taxation was not called for in deciding the case, and is, therefore, mere *dictum*. However, at that time no other justice seems to have questioned the correctness of this portion of the opinion, nor has it been questioned since. It is not an unusual thing that statements and propositions contained in an opinion, not absolutely necessary to the determination of the case, are, nevertheless, sound law. In *Mackay v. San Francisco*, 113 Cal. 392, referring to the article on revenue and taxation in the constitution, it is said: "Section 4 of said article provides that 'a mortgage, deed of trust, contract, or other obligation by which a debt is secured, shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby.' Railroads and other *quasi* public corporations are exempt from the above provision. The constitution not only provides that all 'property' shall be taxed, but defines the word 'property' and expressly includes bonds in that definition, thus placing it beyond the power of the legislature or the courts to say that bonds are not property within the meaning and intention of the constitution."

The constitution not only defines in explicit terms what constitutes property, but also declares that all property, with certain exceptions therein enumerated, shall be taxed, and railroad bonds are not among the enumerated exceptions. The general rule, therefore, is to tax all property, and in such cases it requires plain and explicit terms—not mere inference—to transfer any property from the general to the excepted class. Such terms cannot be found in the constitution in reference to the class of property under consideration.

The legislature attempted, by an amendment to section 3617 of the Political Code, passed at the session of 1895, to exempt this class of bonds from taxation. (Stats. 1895, p. 310.) The amendment in question inserts, in parentheses, after the word "bonds," in that portion of the section defining what constitutes property, the following words: "Except of railroad or *quasi* public corporations," so as to read: "The term 'property' includes moneys, credits, bonds (except of railroad or *quasi* public corporations), stocks, dues, franchises, and all other matters and things, real, personal, and mixed, capable of private ownership," etc.

It is hardly necessary to say that the constitution cannot be amended by any such summary legislative process. In adopting the constitution the people themselves declared how it might be amended, and it is beyond the power of the legislature to amend or alter it in the least without the consent of the people. This attempt to do so, however, shows that it is generally conceded bonds of the character under consideration are taxable as the constitution now stands.

To exempt these bonds would also be to exempt the bonds of all street railroad companies in the state; also the bonds of irrigation and drainage districts, and of such water companies and lighting companies as possess public franchises and deal with public utilities. The amount of capital invested in securities of such companies or corporations held by residents of this state must be very great, and the withdrawal of all this vast amount of property from taxation is, of course, to transfer an equal sum to other property that is taxed; for a given amount of revenue must be raised, in order to keep the state and local governments running.

History teaches that the tendency is, and always has been, for the more favored to shift the burden of governmental support from their own shoulders to the shoulders of those less favored and less able to bear such burden. Doubtless, this tendency comes in part from the inexorable law that "the borrower is servant of the lender." Still, this tendency should not be favored, but rather repressed, where possible.

In the course of debate in the convention on the revenue system, Judge Wynans remarked: "I believe that the owners of mortgages will find a way of evading the payment of taxes in any form. I believe that there will be methods found, and a way invented, to circumvent its objects, but it is our duty to prevent it, if we can. I hope the Johnson amendment will be adopted, and that in addition there will be other means devised to compel the mortgagee to pay the tax; something that will afford them no means of evasion." (Debates, vol. 2, p. 910.)

What was thus said in jest, or by way of sarcasm, perhaps, in view of the success that had attended money loaners in escaping taxation under the old constitution, as already alluded to, it appears has proven to be a veritable forecast of what has taken place.

Nothing is more calculated to produce dissatisfaction and unrest, and justly so, than laws the operation of which favor, or even seem to favor, the few or a class as against the great body of the people.

It should require the most direct and imperative command of the constitution to justify a decision of this court tending to such results, and none such exists here.