HAMMON et al. v. NIX.

(Circuit Court of Appeals, Eighth Circuit.    October 29, 1900.)

No. 1,397.

Tax Sale — Validity — Assessment of Mining Claims under Colorado
Statute.

Laws Colo. 1891, p. 113 (3 Mills' Ann. St. 1891–96, p. 883, § 3226a), which contains but a single provision that "it shall be the duty of county assessors in assessing mining claims which are entered or patented to give on their assessment rolls the mineral survey numbers of the same." must be regarded as mandatory, and the omission of the assessor to comply with it by giving the number of a claim assessed, where it is not corrected, but is carried through the delinquent tax list, advertisements, and all proceedings until the claim is sold, renders the sale invalid, and the deed based thereon void.

Appeal from the Circuit Court of the United States for the District of Colorado.

This was a bill filed by Elizabeth L. Nix, the appellee, against Charles T. Hammon and George M. Seeger, the appellants, to remove a cloud upon her title to the James V. Dexter lode survey, No. 416A, situated in the Uncompahgre mining district, Ouray county, state of Colorado. The cloud consisted of a tax deed executed on May 9, 1898, whereby T. J. York, as treasurer of Ouray county, Colo., conveyed the claim to Charles T. Hammon, one of the appellants, in pursuance of a sale of the claim for the taxes thereon for the year 1891. Subsequently Hammon conveyed to George M. Seeger, the other appellant, an undivided one-half interest in the claim. The case was submitted for decision upon an agreed statement of facts, from which it appears that, as no schedule of the property for taxation was returned by the owners thereof, the claim was listed for taxation for the year 1891 by the county assessor of Ouray county, Colo., at the end of the assessment roll for that year, under the head of "Unknown," by the following description: "James V. Dexter, Red Cañon Creek," and opposite thereto, under the heading "Value of Mines and Output," were the figures "$200.00." The claim in controversy was advertised for sale, the taxes thereon not having been paid, in the list of unknown owners, in the column designated "Mines," by the following description: "James V. Dexter lode Paq." The publication of such notice of sale for the taxes of 1891 commenced on March 22, 1895. It is agreed that the letters "Paq." are an abbreviation of the word "Paquin," that being the name of a mining district in which the property in controversy was situated. A sale of the claim took place pursuant to such advertisement on May 6, 1895, and at such sale the claim was purchased by Ouray county for the sum of $20.15, the taxes assessed for the year 1891 being $19.75. The certificate of sale was subsequently assigned to Hammon, one of the appellants, and on May 9, 1898, the treasurer of Ouray county executed a treasurer's deed in favor of the assignee. The complainant below acquired title to the property on February 3, 1896, through and under the persons to whom the claim belonged at the time it was listed for taxation in the year 1891. The trial court vacated and annulled the tax deed aforesaid, the complainant below having first tendered to the treasurer of Ouray county, and subsequently deposited in court, a sum sufficient to pay all the taxes, interest, and penalties that had been assessed against the property for the year 1891 and subsequent years. From such decree the defendants below have prosecuted an appeal to this court.

Albert E. Pattison, William Story, and William Story, Jr., for appellants.

R. D. Thompson, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The validity of the tax deed which is involved in this case, namely, the deed executed by the county treasurer of Ouray county, Colo., on May 9, 1898, in favor of Charles T. Hammon, is challenged in this court-on several grounds: First, because the assessment was void for want of a proper description of the property; second, because the property in question was not properly advertised for sale; third, because the tax deed is void on its face, in that it shows that the sale was made at a time not authorized by law; and, fourth, because the requisite affidavits were not filed by the county treasurer proving the publication and posting of the notice of the tax sale. We have not found it necessary, however, to consider all of these objections to the validity of the tax deed, since we are satisfied that the first objection must prevail, and that the deed should be canceled because the assessment was void for want of a proper description of the assessed property. Before the assessment was made, the following statute relative to the assessment of mining claims had been adopted by the general assembly of the state of Colorado:

"It shall be the duty of county assessors in assessing mining claims which are entered or patented, to give on their assessment rolls the mineral survey numbers of the same; whether said assessment be for real estate or personal property." Laws Colo. 1891, p. 113.

See, also, 3 Mills' Ann. St. Colo. 1891-96, p. 883, § 3226a.

The statute, as last quoted, embraces all the provisions of an act approved on April 10, 1891, relating to the assessment of mining claims, except a provision which was added to the act declaring that it should take effect immediately. And, inasmuch as the sole object of the act seems to have been to prescribe the manner in which mining claims should be described by the assessor on the assessment roll, the direction in that behalf being that "the mineral survey number" of such claims shall be stated on the assessment roll, it is impossible to regard the act in question otherwise than as mandatory. For some reason—probably because confusion had arisen in the method of describing mining claims—the legislature deemed it advisable that they should thereafter be described on the assessment roll by stating the number of the survey. It accordingly made it incumbent on all assessors to thus describe them, giving such officers no discretion to describe them otherwise. Learned counsel for the appellants have called our attention to a provision found in section 3790, Mills' Ann. St. Colo., which declares that "no irregularity or error or omissions in the assessment of any property, or in the levying of any tax, shall affect in any manner the legality of any taxes levied thereon, nor affect any right or title to such real property which would have accrued to any party claiming or holding the same under or by virtue of a deed executed by the treasurer, as provided by law, had the assessment of such property been in all respects regular"; and they insist that the failure of the assessor to give the survey number of the mining claim in question was a mere irregularity, which, by reason of the statute last quoted, did not impair the validity of the assessment or the treasurer's deed.

We are not able, however, to adopt that view of the case. Section 3896, Mills' Ann. St., declares that "omissions, errors or defects in form in any assessment list or tax roll, when it can be ascertained therefrom what was intended, may be supplied or corrected by the assessor at any time before the return of the assessment roll to the treasurer, or by the treasurer at any time after the receipt of said roll by him. When any omission, error or defect has been carried into a delinquent list, or any error appears in any publication, the list or publication may be amended by the treasurer, and republished as amended; or notice of the correction may be given in a supplementary publication; but such publication must be made in the same manner as the original publication and for not less than one week." Considering these two sections together,—that is to say, sections 3790 and 3896,—it may well be that the failure of the assessor to describe a mining claim properly by omitting to state the number of the mineral survey on the assessment roll is not so far fatal as to destroy the treasurer's deed subsequently executed, provided the error in the description is discovered, and corrected pursuant to section 3896, before the property is advertised for sale and a sale takes place. But to say that a tax deed for a mining claim is not rendered invalid by a failure to state the number of the mineral survey on the assessment roll, although the omission is not supplied before the claim is advertised for sale and sold, would, in effect, nullify the act of April 10, 1891, or at least render it of no practical importance as a guide to assessors. In assessing real property for taxation it is of the highest importance that the property assessed should be so described as to clearly identify it; and when the legislature, as in the case in hand, has taken the pains to declare explicitly how a particular kind of property shall be described on the assessment roll, the act should be regarded as mandatory, and not merely directory. And when no effort is made subsequently to correct the error, and the property is advertised and sold under a description of the same appearing upon the assessment roll, which is different from that prescribed by the legislature, the treasurer's deed conveying the property to the tax purchaser should be held void, and a cloud upon the true owner's title. In accordance with these views, the decree below is in all things affirmed.