[Civ. No. 1251.   Third Appellate District.—April 4, 1914.]

## SPRING VALLEY WATER COMPANY (a Corporation), Respondent, v. COUNTY OF ALAMEDA, Appellant.

Taxation—Constitutional Limitations—Abuse of Power.—So vast is the power of taxation and so readily does it yield to passion, excitement, prejudice, or private schemes, and so frequently is its execution committed to incompetent hands, that any stretch of power on the part of the legislature which authorizes the tax, or of the ministerial officers who levy or execute it, should be unhesitatingly opposed and condemned.

Id.—Riparian Rights —Inclusion in Assessment of Land.—Riparian rights, being rights and privileges appertaining to the riparian land, section 3617 of the Political Code contemplates their inclusion in the assessment of the land, and it must be assumed, nothing appearing to the contrary, that the assessor has pursued this course; if he does not thus intend to include the value of the riparian rights, in assessing the land, it should so appear in his assessment.

Id.—Double Taxation—Riparian Lands and Rights.—The assessment of riparian lands to one person, without any intention appearing to exclude therefrom the appurtenant riparian rights, and the assessment of such rights to another, constitutes double taxation within the prohibition of the constitution and the Political Code.

Id.—Assessment of Property—Sufficiency of Description.—A description in an assessment of riparian rights: "In Washington township, said county: Riparian rights. The right to take, divert and use water from Alameda Creek and its tributaries," is insufficient to impart validity to the tax under section 3650 of the Political Code.

Id.—Record of Assessment—Parol Evidence to Vary.—Parol evidence is not admissible to vary or affect the written record of an assessment.

APPEAL from a judgment the Superior Court of Alameda County.   Wm. H. Waste, Everett J. Brown, and Wm. S. Wells, Judges.

The facts are stated in the opinion of the court.

W. H. L. Hynes, and Walter J. Burpee, for Appellant.

McCutchen, Olney & Willard, for Respondent.

BURNETT, J.—Two actions were brought to recover taxes claimed to have been illegally collected. The first included the assessment for the fiscal year 1911–1912 and the other for 1912–13. The amount of the two was $88,237, and the same legal question is involved in each action. In fact, they were tried together but the record is presented in two different transcripts.

The trial was before Hons. William H. Waste, Everett J. Brown, and William S. Wells, judges of the superior court of Alameda County, sitting in Bank, and they decided that the purported assessments, as follows: "In Washington township, said county: Riparian rights. The right to take, divert and use water from Alameda Creek and its tributaries"—$21,677.00 and "In Pleasanton township, said county: Riparian rights. The right to take, divert and use water from Alameda Creek, Calaveras Creek, Arroyo de Laguna, Arroyo del Valle, Arroyo Honda, San Antonio Creek and contributory branches"—$20,160.00, were and are invalid and void. They based their conclusion, apparently, upon the following grounds: "1 That there is no sufficient or adequate description in the said assessment book of the property assessed, or intended to be assessed, as required by the constitution and laws of the state of California. 2. That riparian rights do not nor does the right to take, divert and use water from creeks or streams, constitute property subject to assessment and taxation under the constitution and laws of the state of California, apart from the land to which such riparian rights are appurtenant, or of which the same constitute and form part and parcel. . . . 4. That all of the riparian lands along the said Alameda Creek, Calaveras Creek, Arroyo de Laguna, Arroyo del Valle, Arroyo Honda, San Antonio Creek and contributory branches, are elsewhere assessed in the said assessment book at their full cash value, including all riparian rights appurtenant thereto or constituting part and parcel thereof, and that to assess the said riparian rights separately is to assess the same property twice. 5. That the riparian rights to the waters of the said stream ai assessable only as appurtenant to, and part and parcel of, the lands riparian to the said streams, and are in the said assessment book illegally and improperly assessed separately therefrom. . . . 8. That if it is intended in the said assessment

to describe water in the said creeks, such water is not property subject to assessment under the constitution and laws of the state of California, and the said assessment is so inextricably mingled with the assessment of riparian rights as not to be susceptible of separation therefrom.''

The foregoing appear in the findings of the court, having been incorporated therein from the written protest of respondent against the payment of the tax. Some other grounds are set forth, also, but they are substantially covered by the quotation.

We think there can be no doubt as to the soundness of at least two of these reasons for holding the assessment to be void. In fact, the position of respondent is contested by the district attorney in a manner somewhat perfunctory, that official probably feeling that on account of the large amount involved and to avoid criticism he should invoke the judgment of an appellate court upon the question at issue.

The primary principle underlying the judgment is as stated by Judge Cooley in his work on Taxation, page 598, as follows: ''The assessment being so important, the statutory provisions respecting its preparation and contents ought to be observed with particularity. They are prescribed in order to secure equality and uniformity in the contributions which are demanded for the public service, and if officers, instead of observing them, may substitute a discretion of their own, the most important security which has been devised for the protection of the citizen in tax cases might be rendered valueless.'' As suggested in his preface to the first edition of this work, so vast is the power of taxation and so readily does it yield ''to passion, excitement, prejudice or private schemes,'' and so frequently is its execution committed to incompetent hands, that any stretch of power on the part of the legislature which authorizes the tax or of the ministerial officers who levy or execute it, should be unhesitatingly opposed and condemned.

It cannot be disputed that the provisions for the exercise of this power in this state are specific and complete. We are concerned here, however, only with sections 3607, 3617, and 3650 of the Political Code. The first of these provides, in a general way, as to what property is subject to taxation and it prohibits double taxation. In fact, the constitution it-

self precludes double taxation. (*Estate of Fair*, 128 Cal. 607, [61 Pac. 184].) It is true, also, that double taxation does not necessarily consist in assessing the same property twice to the same person but may consist in requiring a double contribution to the same tax on account of the same property though the assessments are to different persons. (*Germania Trust Co.* v. *San Francisco*, 128 Cal. 589, [61 Pac. 178], *Estate of Fair*, 128 Cal. 607, [61 Pac. 184].)

In the case at bar it appears that the land was fully assessed and, in addition, the assessor listed the "riparian rights." But these rights are unmistakably "appurtenant to" and a part of the land. The case would be no different if the assessor had assessed the land and improvements thereon and thereafter had assessed again the improvements. It is true that in assessing the land he did not specify the "riparian rights," but it must be assumed that he included them as they are a necessary part of the value of the land. "Riparian rights" are not common to the citizens at large but they exist as an incident to the right of the soil adjacent to the water. In such ownership they have their origin. (*McCarthy* v. *Murphy*, 119 Wis. 159, [100 Am. St. Rep. 876, 96 N. W. 531].) "The rights which a riparian proprietor has with respect to water are entirely derived from his possession of the land abutting thereon." (*Potomac Steamboat Co.* v. *Upper Potomac Steamboat Co.*, 109 U. S. 672, [27 L. Ed. 1070, 3 Sup. Ct. Rep. 445, 4 Sup. Ct. Rep. 15].)

Said section 3617 provides that "The term 'real estate' includes: 1. The possession of, claim to, ownership of, or right to the possession of land. 2. . . . and all rights and privileges appertaining thereto." Riparian rights being "rights and privileges appertaining thereto," the statute contemplates, of course, their inclusion in the assessment of the land and we must assume that this course was pursued. If the assessor did not intend to include the value of the riparian rights it should so appear in his assessment.

As to the riparian rights claimed to belong to respondent independent of the ownership of the land, if we assume that they are capable of separate assessment we would also be confronted with the presumption that they were included in the assessment for the full value of the lands to which said rights are appurtenant. It may be said also, in this connec-

tion, that the other riparian lands as to which respondent did not own any rights were assessed in the same manner as the lands which we have already considered.

The situation, then, is that the lands owned by the Spring Valley Water Company, the lands not belonging to said company but as to which it is claimed the company owned the riparian rights and the lands as to which the company had no right were all assessed for their full cash value without any deduction for riparian rights, and the assessment itself shows that this addition of three million dollars to the roll was in the face of the constitutional inhibition as to double assessment.

But, assuming that these riparian rights were not included in the assessment of the parent estate and that they are capable of separate and independent assessment, still the judgment must be affirmed for the reason that the description of the property is too vague and indefinite. It is not disputed that they are interests in real property but the only attempt at identification is the recital of the road and school district in which and of the creeks along which they are located. Said section 3650 provides that the property must be listed "under the appropriate head. . . . 2. Land, by township, range, section, or fractional section; and when such land is not a congressional division or subdivision, by metes and bounds, or other description sufficient to identify it, giving an estimate of the number of acres, not exceeding in each and every tract six hundred and forty acres, locality, and the improvements thereon." Herein it is manifest there was no pretense of complying with said requirement. It would be impossible from the assessor's description to identify the property. No idea can be formed even of the number of acres involved or at what points or on which side of said streams the rights are located. The description would have been no more indefinite and uncertain if the assessor had simply listed the property as "the riparian rights" of respondent in the specified district.

"Where the legislature has declared specifically how a particular kind of property should be assessed on the assessment-roll, the statute should be regarded as mandatory, not directory." (*Hammon* v. *Nix,* 104 Fed. 689, [44 C. C. A.

132].) This case holds that the assessor's failure to comply with the Colorado statute requiring the survey numbers of mining claims to be given on the assessment-rolls renders a sale void if not corrected before.

Under a statute providing that resident lands shall be assessed by the number of the lot or such other description as it is commonly known by, the description "L. G. M.—J. M. occupant—75 acres" is insufficient. (*Jones* v. *Blanchard,* 62 N. H. 651.)

Under a statute providing that assessors in assessing certain bridges shall state "the metes and bounds of the ground occupied by such bridge," the assessors should state the length of the bridge and approach assessed. (*Keokuk & H. B. R. Co.* v. *People,* 145 Ill. 596, [34 N. E. 482].)

The foregoing are sufficient to indicate what particularity of compliance with the requirement of the statute is demanded of assessors in a matter of so much importance to the taxpayer.

If we conjecture that the assessor had in view the right to take water from said creeks to sell and assume that said right is property which is assessable to respondent, it is sufficient to say that in the condition of the assessment-roll such conclusion would be nothing more than a mere conjecture and utterly insufficient to warrant a reversal of the judgment.

It is true that an effort was made to supply the defect in the assessment by the testimony of J. C. Hedemark, chief deputy of the county assessor. After directing his attention to the assessments in question he was asked: "Are you familiar with them, or sufficiently familiar with them to be able to state whether or not there was any deduction made from the amount of the assessments on account of riparian rights, or whether there were separate assessments made, one for the land and the other for riparian rights?" The district attorney, in explanation of this question, stated that his purpose was to show "that the land was not assessed for as much as it would have been had the riparian rights been included in the assessments; that the riparian rights for all the various pieces of land that they owned were assessed separately and distinctly from the lands in order that there might be one assessment of the water-rights and one assessment of the real estate." He further stated that his proposition was "to prove by this witness by extrinsic

evidence that the books are incorrect.'' This the court held he could not do.

It is apparent from the preliminary examination of the witness that his testimony, if received, would have been hearsay, as he did not make the assessment. It is also manifest that his answer could at most have relieved the situation of the appearance of double assessment and would not have removed the objection as to the description of the property.

But the ruling was clearly justifiable on the ground that parol evidence is not admissible to vary or affect the written record of the assessment.

''Assessment is, from its legal requirement, and the necessity of preserving the evidence, a written entry, and must depend upon the records of the commissioner's office, and not upon parol testimony or the private duplicate of the assessor.'' (*Philadelphia* v. *Miller,* 49 Pa. St. 440.)

In *Allen* v. *McKay,* 139 Cal. 94, [72 Pac. 713], it was held that ''The sole and exclusive evidence of the date of the assessment of real property is the date when the assessment-roll was completed and certified by the assessor; and the parol evidence of the assessor is not admissible to show an earlier date of such assessment.''

In *Savings and Loan Soc.* v. *San Francisco,* 146 Cal. 680, [80 Pac. 1089] it is declared: ''It has often been said that the assessment-roll, when completed and certified to the board of supervisors, is the only evidence of the acts and intentions of the assessor.'' (Citing cases.)

In conclusion it may be stated that no suggestion has been made that respondent is seeking to avoid the payment of a just tax. While that proposition was not urged or directly presented, it is apparent, on the contrary, from what precedes that the assessment in controversy imposed an unjust as well as an illegal burden.

The judgment is affirmed.

Chipman, P. J., concurred.

HART, J., concurring.—I concur in the judgment on the ground last stated in the opinion of Justice Burnett, viz.: That the riparian rights attempted to be assessed are not so described in the assessment as to conduce to a ready or definite

identification of the particular water-rights thus sought to be burdened. As pointed out by Justice Burnett, the failure thus to describe said riparian rights is plainly repugnant to the requirements of section 3650 of the Political Code.

The findings and conclusions of law, however, appear to be susceptible of inferences which might be so construed as to establish the principle that riparian rights are not capable of being assessed separately from the lands to which they are appurtenant, and upon this point I am not now prepared to express an opinion satisfactory to myself. But it may not be amiss to suggest that, if such rights may be granted without granting the lands to which they are appurtenant, it would seem that necessarily they may be assessed as property separately from such lands, unless it may justly be held that, although so granted or conveyed to another, they are still to be included in the assessment of such lands, and thus assessed to the grantor of such rights. Manifestly, if, having been so granted, such rights may be assessed to the grantee, who has not acquired the lands to which they are appurtenant, then they may be assessed separately from such lands while the title to both the lands and the rights still remain in one person. Of course, as Justice Burnett declares, if such an assessment is permissible, the description of the riparian rights in the assessment must be such as clearly to show that such rights are connected with or appurtenant to the lands of which they are a part and parcel.

The obvious proposition may also be suggested that riparian rights, although in legal contemplation a part and parcel of the lands to which they are appurtenant, are a mere usufruct and, therefore, when it comes to the assessment of lands to which they are appurtenant, cannot be governed by the principle, *cujus est solum ejus est usque ad coelum, et ad inferos.*

However, as stated, on the propositions here suggested I express no opinion, since there is no necessity therefor in this case.