[L. A. No. 6525.  In Bank.—September 15, 1921.]

## THE PEOPLE OF THE STATE OF CALIFORNIA ex rel. CHARLES COE, Appellant, v. THE CITY OF LOS ANGELES, Respondent.

[1] MUNICIPAL CORPORATIONS—CONSOLIDATION—CONDITIONS OF.—Under the law of this state relative to consolidation of municipal corporations there may be a consolidation without any assumption of existing bonded indebtedness, a consolidation with the assumption of all the existing bonded indebtedness, and a consolidation with the assumption of only a part of the existing bonded indebtedness.

[2] ID.—ELECTION—OFFICIAL BALLOT—STATEMENT OF PROPOSITION.— The importance of stating upon the official ballot, at least in terms sufficiently specific to bring home to the voter knowledge of the general nature of the proposition upon which he is to vote, has been uniformly recognized by all our laws relative to elections under the so-called Australian ballot system.

[3] ID.—ACT FOR CONSOLIDATING MUNICIPALITIES—CONSTRUCTION OF.— It was the design of the act "to provide for the consolidation of municipal corporations," approved June 11, 1913 (Stats. 1913, p. 577), as amended April 29, 1915 (Stats. 1915, p. 311), that a proposition to consolidate municipal corporations should be stated upon the official ballot in terms sufficiently specific to tell the voter in a general way what the whole proposition was; and where there is a failure to indicate on the ballot that there is to be an assumption by one of the municipalities of a part of the bonded

indebtedness of the other, the departure from the requisite form of ballot under the Consolidation Act is so substantial in nature that it cannot be held not to have affected the result, and there was no consolidation of the municipalities by the election.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Delphin M. Delmas and F. G. Blood for Appellant.

Jess E. Stephens, City Attorney, Wm. P. Mealey, Assistant City Attorney, Lucius P. Green, Assistant City Attorney, and James G. Leovy, Deputy City Attorney, for Respondent.

ANGELLOTTI, C. J.—This proceeding is one of *quo warranto*, instituted by the attorney-general on the relation of Charles Coe. By it the people of the state assail the validity of the consolidation proceedings under which it is claimed by the city of Los Angeles that the city of Sawtelle has become consolidated with and is a part of the city of Los Angeles, and under which the latter city is exercising municipal governmental functions over the city of Sawtelle. The judgment of the trial court was in favor of the defendant, and we have before us an appeal from such judgment.

The city of Sawtelle existed up to May 4, 1917, as a separate municipality of Los Angeles County. On that day an election was held therein, pursuant to proceedings theretofore regularly had, to determine whether it should be consolidated with the larger city of Los Angeles, with the result that by a majority of three or four out of a total vote of something over a thousand, it was declared that the cities should consolidate. No question is raised as to the effectiveness of the election held in the city of Los Angeles. The principal claim of appellant is that by reason of the form of ballot used in the election in Sawtelle the question to be submitted to the electors thereof was never submitted to nor voted upon by such electors, with the result that the election therein was ineffective for any purpose. It would follow, the consent of the electors manifested by their votes

at such an election being essential to a consolidation, that no consolidation was ever effected.

At the time of the proceedings the city of Los Angeles had a large existing bonded indebtedness, for which, of course, none of the property in the city of Sawtelle was liable. It was proposed as one of the conditions of consolidation that for the payment of a very considerable part of such bonded indebtedness the property in the city of Sawtelle should, after consolidation, be subject to taxation in common with the property in the city of Los Angeles as it had theretofore existed. This condition was fully expressed in the petition originating the consolidation proceeding and in the various orders and notices in such proceeding in both cities. It is conceded by both parties, as it must be, that the question to be submitted to the electors of each city was the single and indivisible proposition that the two cities be consolidated with the assumption by the city of Sawtelle of the burden of taxation for the payment of the specified part of the existing bonded indebtedness of the city of Los Angeles, and that unless the proceedings were such as to impose that burden on Sawtelle, no consolidation was effected.

The proceedings were had under the provisions of an act "to provide for the consolidation of municipal corporations," approved June 11, 1913 (Stats. 1913, p. 577), as amended April 29, 1915 (Stats. 1915, p. 311). Section 2 of that act, having to do with such proceedings where no assumption of existing bonded indebtedness by either city is contemplated, provided, among other things, that upon the filing of the proper petition with the legislative body of the city having the smaller population, that body must call a special election "and submit to the electors of such municipal corporation the question whether such municipal corporation shall be consolidated." Notice of such election is required to be given, which notice, among other things *"shall distinctly state the proposition to be submitted"* (italics ours). It further provided that upon the ballot there shall be printed the words "Shall the cities of —— and —— be consolidated?" with the words "Yes" and "No" with voting squares in which the voter was to stamp a cross to indicate his vote. Various other provisions as to time and manner of notice, voting precincts, election

officers, polls, etc., are included.   Section 3 had to do with
the subsequent proceedings in the larger city, and it is here
expressly provided that "the question" submitted to the
electors thereof "shall be stated in the notice of such elec-
tion *and on the ballots* to be used at such election."   Sec-
tion 5, as amended April 29, 1915, had to do with such con-
solidation where there was an existing bonded indebtedness
on the part of either or both of the municipalities as to
which assumption was desired.   It provided that in such a
case "the petition . . . may contain a request that the
question to be submitted to the electors of the municipal
corporation proposed to be consolidated shall be, *whether
such municipal corporations shall be consolidated, as herein-
before in this act provided, and the property in such muni-
cipal corporations shall, after such consolidation, be sub-
ject to taxation at the same rate, to pay any of such bonded
indebtedness specified in said petition.*"   It was then pro-
vided that if such request be made in the petition, "the
question of such consolidation shall be submitted to the
electors in such municipal corporation not having the great-
est population, *the same in all respects as upon a petition
presented under the provisions of section two,* excepting
that the notice of election shall, in addition to the matters
required by said section, distinctly state that it is proposed
that the property in such municipal corporation shall be
taxed at the same rate to pay such bonded indebtedness
set forth in said petition."   (Italics wherever used are
ours.)   The petition here did ask for the submission of this
question of consolidation *and* assumption by Sawtelle of the
burden of taxation with the city of Los Angeles for cer-
tain specified portions of the bonded indebtedness of the
city of Los Angeles.   The ordinance of Sawtelle calling the
election was one "calling a special election *to submit to
the electors of the city of Sawtelle*" the question, "Shall
the cities of Sawtelle and Los Angeles be consolidated *and*
the property in the said city of Sawtelle thereafter be
taxed . . . to pay for certain bonded indebtedness of said
city of Los Angeles."   The notice of election distinctly
stated the proposition "to be so submitted" as including
said burdening of the property in Sawtelle with a part of
the Los Angeles indebtedness, such part amounting to some-
thing over thirty million dollars.   The notice, however,

provided for an official ballot entirely silent on the question of bonded indebtedness, and containing only the questions, "Shall the cities of Sawtelle and Los Angeles be consolidated?" "Yes," and "Shall the cities of Sawtelle and Los Angeles be consolidated?" "No," with a voting square to the right of and opposite each proposition, in which the voter, to whom such official ballot was delivered at the polling place, was called upon to vote by stamping a cross. The notice of election stated if he stamped a cross in the square after "Yes" his vote should be counted in favor of consolidation, and if in the square after "No" the vote should be counted against the consolidation.

The ballot used at the election was as follows:

### "INSTRUCTIONS TO VOTERS.

"To vote on the question or proposition, stamp a cross (X) in the voting square after the word 'Yes' or after the word 'No.' All marks, except the cross (X) are forbidden. All distinguishing marks or erasures are forbidden and make the ballot void. If you wrongly stamp, tear or *deface this ballot, return it to the inspector of election and obtain another.*

| Shall the cities of Sawtelle and Los Angeles consolidate? | Yes | | |
|---|---|---|---|
| | No | | " |

The only votes for consolidation at the election in Sawtelle were such as were indicated by a cross stamped in the square at the right of the word "Yes" on such a ballot. No opportunity was given to any elector to vote in any other way or upon any proposition other than the one printed therein.

At the time of the proceedings, subdivisions 6 and 7 of section 8½ of article XI of the state constitution provided as follows:

Subdivision 6. " . . . No property in any territory hereafter consolidated with or annexed to any city or city and county shall be taxed for the payment of any indebtedness of such city or city and county outstanding at the date of such consolidation or annexation and for the payment of which the property in such territory was not, prior to such consolidation or annexation, subject to such taxation, unless there shall have been submitted to the qualified electors

of such territory the proposition regarding the assumption of indebtedness as hereinbefore set forth and the same shall have been approved by a majority of such electors voting thereon.''

Subdivision 7. ''In all cases of . . . consolidation of two or more incorporated cities, assumption of existing bonded indebtedness by . . . either of the cities so consolidating may be made by a majority vote of the qualified electors voting thereon in the territory or city which shall assume an existing bonded indebtedness.''

It is obvious, in view of the constitutional provisions set forth, that consolidation upon the basis of subjecting property in Sawtelle to taxation for the payment of any part of the existing bonded indebtedness of Los Angeles was not effected ''unless there'' was ''submitted to the qualified electors'' of Sawtelle ''the proposition regarding'' such assumption, and such proposition was approved ''by a majority of such electors voting thereon.'' This is conceded. But it is claimed, despite the fact that there was no word upon the official ballot to suggest that any question regarding assumption of indebtedness was involved, that the proposition was nevertheless ''submitted to the qualified electors'' of Sawtelle, and approved by a majority thereof, because of the statement of the proposition *''to be . . .* submitted'' contained in the notice of election, and the requirement in said notice as to the form of ballot to be used at the election, which requirement, it is insisted, was in strict accord with the provisions of the act of June 11, 1913, as amended April 29, 1915, hereinbefore noted. By this notice, it is said, the electors were given full and specific notice that a vote for consolidation meant consolidation with assumption of the indebtedness specified in the notice, and the ballot used, being, it is claimed, in the form required by the act, the proposition of assumption of indebtedness was, in fact, submitted to and approved by a majority of the electors.

[1] It is to be observed that under our law relative to consolidation of municipal corporations there may be a consolidation without any assumption of existing bonded indebtedness, a consolidation with the assumption of all the existing bonded indebtedness, and a consolidation with an assumption of only a part of the existing bonded indebtedness. The proposition here ''to be submitted'' was the last

of these, a consolidation with an assumption by Sawtelle of a part of the existing bonded indebtedness of Los Angeles. It was placed upon the official ballot furnished the electors just as though it were the first of these, viz., a proposition for consolidation without any assumption of existing bonded indebtedness, a perfectly legal proposition under the law, but, in view of that very fact, one essentially misleading under the circumstances of this case. The ballot professed on its face to tell the voter what proposition he was to vote on, but told only half the story, omitting all reference to the very essential part relative to the assumption of any existing bonded indebtedness, the thing as to which it has been deemed proper by the people of the state to enact a constitutional provision requiring submission of the proposition to the electors and approval by them before it could be accomplished.

[2] The importance of stating upon the official ballot, at least in terms sufficiently specific to bring home to the voter knowledge of the general nature of the proposition upon which he is to vote, has been uniformly recognized by all our laws relative to elections under the so-called Australian ballot system. It is a matter of common knowledge that a great proportion of the electors have no other official knowledge of the matters to be voted on. The power of the legislature to prescribe the form of ballot may be fully conceded, but certainly it is not to be assumed that such body ever intended to provide a form of ballot that would present a proposition to the elector in such a way that it would appear to him to be an entirely different proposition from the one actually intended, even if we should assume it could legally do this. To our minds, under a fair and reasonable construction of the Consolidation Act of June 11, 1913, as amended April 29, 1915, no support can be found therein for the ballot that was used at the Sawtelle election. [3] It cannot fairly be disputed that it was the design of the act that the proposition to be submitted was to be stated upon the official ballot in terms sufficiently specific to tell the voter in a general way what the *whole* proposition was. As we have noted, section 2 had to do solely with consolidations without any assumption of existing bonded indebtedness, and it was as to *such* a consolidation that the requirment as to the statement of the question on the

ballot was made.  As to *such* a consolidation, the statement
there set forth was a full and complete statement of *the
proposition to be voted on*, and the act, in terms, required
this statement to be made on the ballot.  In other words,
the legislature said that *the proposition* must be stated on
the official ballot.  Can it be fairly doubted that such, viz.,
that *the proposition*, must be stated on the ballot, was the in-
tent of the legislature in section 5 of the act, the section
relative to consolidations with assumption of indebtedness.
As we have seen, this section in terms states as the question
to be submitted in such a case, a very different question
from that submitted under section 2, one expressly includ-
ing the matter of assumption of indebtedness, and the sec-
tion expressly provides that ''the question of such consoli-
dation'' be submitted to the electors, meaning, of course,
that the question theretofore described be submitted, with
the reasonable implication to our minds that *such* be the
question to be, in substantial part at least, printed on the
ballot.  In other words, the act, fairly construed, requires
the proposition to be submitted to be printed, in substantial
part at least, on the official ballot.  The language of section
5 of the act that except as to certain matter required to be
distinctly stated in the notice of election, ''the question'' in
such a case is to be submitted ''the same in all respects as
upon a petition under the provisions of section two,'' spe-
cially relied on by learned counsel, cannot fairly be construed,
in the nature of things, as referring to the form of state-
ment of the question on the ballot, and as authorizing a
statement misrepresenting the question submitted, and not
in accord with the fact.  It is *the question to be submitted*
that is to be submitted in all respects as on a petition pre-
sented under section 2, and the provision simply means that
*such* question, not some other question, is to be submitted in
all respects as the question arising under section 2 is sub-
mitted, which, to our minds, includes the statement of such
question on the ballot.

The departure from the form of ballot requisite in this
case under the Consolidation Act was so substantial in
nature that it cannot be held not to have affected the result.
It is very clear that in view of the facts it must be held
that under the provisions of that act, the proposition of
assumption of indebtedness was never in fact submitted

to the electors of Sawtelle or approved by them. This being our conclusion as to the proper construction of the act, it is unnecessary to consider any question as to its validity under a different construction.

From the foregoing it follows that there has been no consolidation of the city of Sawtelle with the city of Los Angeles.

The material facts we have discussed, which are undisputed, are sufficiently shown by the findings to warrant, as asked by the appellants, direction that judgment be entered in their favor.

The judgment is reversed, with directions to the court below to enter judgment upon the findings already made, in favor of plaintiffs, in accord with the prayer of their complaint.

Shaw, J., Lennon, J., Sloane, J., and Lawlor, J., concurred.

Shurtleff, J., not having heard the oral agrument, did not participate.

WILBUR, J., Dissenting.—I dissent.

The statute under which the election was held expressly provides for the form of ballot. Ballots in this form were used at the election. Section 5 of the act, which regulates the procedure in the event that the assumption of a portion of the bonded indebtedness of the larger city is involved, after expressly providing for the filing of a petition praying that "the property in such municipal corporations, shall after such consolidation, be subject to taxation at the same rate, to pay any of such bonded indebtedness specified in said petition; . . ." then provides, as stated in the main opinion, that "the question of such consolidation shall be submitted to the electors in such municipal corporation not having the greatest population, the same *in all respects* as upon a petition presented under the provisions of section two, *excepting that the notice of election shall,* in addition to the matters required by said section, distinctly state that it is proposed that the property in such municipal corporations shall be taxed at the same rate to pay such bonded indebtedness set forth in said petition." (Italics mine.)

Thus the legislature dealt with the question of what differences are to be made in the procedure by reason of the submission to the electors of the question of the assumption of a bonded indebtedness. In the very sentence dealing with this proposition it is provided that the proceedings shall be the same in all respects as in the case where no question of bonded indebtedness is involved, with the single exception that in the former case the *notice of election shall specify the bonded* indebtedness to be assumed. If the form of ballot is changed so as to include therein a statement of the assumption of indebtedness, then the election is not conducted *"in all respects"* as it would otherwise be conducted, with the *single exception* mentioned in the statute, there are two exceptions because the exception applicable to the notice of election is read into the form of ballot and made applicable thereto, as well as to the notice of election.   To express this meaning the clause of the sentence in the statute under consideration should read as follows: ". . . in all respects as upon a petition presented under the provisions of section two, excepting that (*ballot* and) the notice of election shall, in addition to the matters required by said section, distinctly state that it is proposed that the property in such municipal corporations shall be taxed at the same rate to pay such bonded indebtedness set forth in said petition."

It is conceded in the main opinion that the form of the ballot is a matter for legislative determination. If that is true the legislature of the state in such statute either did or did not provide the form of ballot. If it did provide the form of ballot in the case at bar, what is. to be printed thereon as a statement of the proposition to be voted upon, and who is to determine the exact language thereof? The statement of the indebtedness contained in the election notice is as follows:

"That it is proposed to consolidate the city of Sawtelle with the city of Los Angeles (a city contiguous thereto and having a greater population), and that the property in the city of Sawtelle shall, after consolidation, be subject to taxation equally and at the same rate with property in the city of Los Angeles, to pay certain bonded indebtedness of said city of Los Angeles outstanding at the date of consolida-

tion, or indebtedness theretofore authorized, to be represented by bonds of said city of Los Angeles thereafter to be issued from the hereinafter set forth list:

"That the improvements for which such indebtedness of said city of Los Angeles was so incurred or authorized, the amounts of such indebtedness already incurred, outstanding at the date of the first publication of this notice, and the amounts of such indebtedness of said city theretofore authorized and to be represented by bonds hereafter to be issued, and the maximum rate of interest payable or to be payable on such indebtedness are as follows:

" 'Water Works Bonds' authorized September 7, 1915, in the sum of $1,500,000 to provide the city of Los Angeles with a water supply in the Owens River Valley, and bearing interest at the rate of 4 per cent per annum, of which there is outstanding $1,087,500;

" 'Water Works Bonds' authorized June 12, 1907, in the sum of $23,000,000, for the purpose of acquiring and constructing waterworks for supplying the inhabitants of the city of Los Angeles with water from the Owens River Valley, bearing interest at the rate of 4 per cent per annum and 4½ per cent per annum, of which there is outstanding $20,968,400;

" 'Electric Plant Bonds' authorized April 19, 1910, in the sum of $3,500,000, for the purpose of acquiring and constructing works for generating and distributing electricity for the purpose of supplying the inhabitants of the city of Los Angeles with light, heat and power, and bearing interest at the rate of 4½ per cent per annum;

" 'Harbor Improvement Bonds' authorized April 19, 1910, in the sum of $3,000,000 for the purpose of opening streets, constructing docks, wharves and warehouses at Los Angeles Harbor, and the constructing and maintaining of canals and waterways, and the acquisition of the necessary lands for said improvements, and bearing interest at the rate of 4½ per cent per annum, of which there is outstanding $2,625,000;

" 'Water Works Bonds' authorized April 15, 1913, in the sum of $1,500,000, for the purpose of acquiring and constructing works for conducting water of the Los Angeles Aqueduct to the city of Los Angeles for domestic, irrigating and other uses, and to be known as the 'Los Angeles City

Trunk Line,' and bearing interest at the rate of 4½ per cent per annum, of which there is outstanding $1,350,000;

" 'Harbor Improvement Bonds' authorized April 15, 1913, in the sum of $2,500,000, for the purpose of opening streets, constructing docks, wharves and warehouses at Los Angeles Harbor, and the constructing and maintaining of canals and waterways, and the acquisition of the necessary lands for said improvements, and bearing interest at the rate of 4½ per cent per annum, of which there is outstanding $2,305,000;

" 'Electric Plant Bonds' authorized May 8, 1914, in the sum of $6,500,000, for the purpose of acquiring and constructing works for generating and distributing electricity for the inhabitants of the city of Los Angeles with heat, light and power, bearing interest at the rate of 4½ per cent per annum.''

Is this whole statement of the nature and character of the indebtedness to go on the ballot? Must the ballot show not only the actual bonds sold but the amount of bonds which the city is already authorized to sell by reason of the voting of the bond issue? If this whole statement is not to be incorporated on the ballot, who is to determine what portion is to be inserted and what is to be omitted? It would seem clear that if the legislature had contemplated that any statement in regard to the indebtedness should be actually printed on the ballot, they would have indicated some short method of stating the proposition.

The scrupulous care with which the legislature considered the effect upon the proceedings of the assumption of bonded indebtedness is shown by the special provision contained therein with reference to the particular case where the annexed territory is to assume its proportion of *all* of the bonded indebtedness of the city. In such case it is provided that it is sufficient in the petition and in all other proceedings to describe the same as the bonded indebtedness of (Los Angeles, for instance). The particular language is as follows: "provided, however, that if such petition contains a request that the property in such municipal corporations be, after such consolidation, subject to taxation to pay all of the bonded indebtedness incurred or authorized of such municipal corporations, such bonded indebtedness and improvements for which such bonded indebtedness was in-

curred or authorized may be described in such petition and in all other proceedings hereunder as 'the bonded indebtedness of —— (insert the names of the municipal corporations),' without specifying the improvements."

If the legislature has not covered the form of ballot for the particular case where the question of consolidation and assumption of indebtedness are both submitted as a single proposition to the voters, the question is whether the officials conducting the election are charged with the obligation of determining the exact language to be printed upon the ballot. It would seem clear that the authority should be exercised by the legislative body or bodies intrusted with the conduct of the election rather than by the clerk who prepares the form of ballot for the printer.

The board of trustees of the city of Sawtelle by Ordinance No. 186 made provision for the conduct of the election in question and caused a notice of election to be published in accordance therewith, in which it was said: "That upon the ballots to be used at said special election, in addition to the other matter required by law, there shall be printed the following: 'Shall the cities of Sawtelle and Los Angeles be consolidated?' 'Yes,' and 'Shall the cities of Sawtelle and Los Angeles be consolidated?' 'No,' and there shall be a voting square to the right of and opposite each proposition, and on separate lines." Then follow directions for the marking of the ballot. This form of ballot was that by which the trustees of Sawtelle submitted to the electors thereof the single question whether the two cities should be consolidated and the territory formerly under the jurisdiction of the city of Sawtelle be subjected to taxation for the portion of the indebtedness of the city of Los Angeles specified in the notice of election.

In so far as this form of ballot fails to show on its face the results with reference to the indebtedness which are to be brought about by the affirmative vote, it is suggested that the ballot is deceptive. Surely the voters must have known that consolidation would have some effect upon the indebtedness of both cities involved. "As a rule, existing debts of the corporation contracted before the limits were extended, unless otherwise provided by law, are chargeable upon the added territory as well as that comprehended by the boundaries before they were altered or extended."

(McQuillin on Municipal Corporations, sec. 294.)   In the absence of any notice to the contrary, therefore, the voters voting at the election would assume that the effect of consolidation would be to charge them proportionately with the entire indebtedness of the city of Los Angeles.   It is true, as pointed out in the main opinion, that the particular statute under consideration does permit a consolidation of city governments whereby neither city would assume any of the indebtedness of the other.   It is fundamental in the administration of the law that everyone is presumed to know the law.   The voter, therefore, is presumed to know that he is to ascertain the effect of his ballot in this particular instance by consulting the notice of election and the petition originating the proceedings.   No voter is entitled to have printed upon the ballot all of the information which may be necessary for him to exercise an intelligent choice.   All he is entitled to in this regard is that his ballot may be deposited by him in such fashion as to clearly indicate his decision upon the question submitted to the voters.   And this is usually done by merely stamping a cross in one or another of two places upon the ballot.   If there is any difficulty in this case it arises not from any uncertainty in the form of ballot or as to the issues submitted to the voters, but from a failure to incorporate in the ballot information which would assist the voter in determining how he should cast his vote.

I fully agree with the majority of the court that it would have been desirable to have indicated in some form upon the ballot the fact that the effect of the vote was to charge the property within the former territory of Sawtelle with a portion of the indebtedness of the city of Los Angeles, thus calling the attention of the careless voter to the significance of his vote, but the determination of the form of the ballot is one for the legislature, and I think that the form of the ballot is so clearly indicated in the statute in question that no executive officer charged with the preparation of ballots could think of departing from the plain terms of the statute nor would well advise city councils to do so.   They would do what was done in this case to clarify the exact proposition submitted to the voters by a declaration thereof in the ordinance calling the election and in the notice of election, and by expressly providing for the form of the ballot which

would be used in the determination of the question submitted, such form to accord with the statutory provision.

There was no chance for the voters of Sawtelle to be defrauded or misled in this matter. If they were not informed as to the terms of the statute and if they were unfamiliar with the express statute, and merely relied upon general principles in voting, they knew that the property in the city of Sawtelle would have been charged with a larger indebtedness than that actually assumed by the vote for consolidation.

In view of the opinion of the majority of the court, the constitutional question raised in the petition for rehearing in this court becomes unimportant to a decision. If, however, the statute is construed as I contend it should be, the constitutional question is involved, and as a conclusion in favor of the appellant would require a concurrence on my part in the main opinion, I briefly state my views in relation thereto. Section 8½, article XI, of the constitution, as amended in 1918, quoted in the main opinion, provides that no property in any territory hereinafter consolidated with or annexed to a city shall be taxed for the payment of any *outstanding indebtedness of the city* unless the proposition of incurring the assumption of indebtedness is approved by a majority of the electors voting thereon. If this section requires that the fact of indebtedness and of its proposed assumption be printed upon the ballot, then the statute under consideration as construed by me would be unconstitutional, for it provides for the consolidation of cities and an assumption of indebtedness without such a statement on the ballot. But in order to submit a question to the voters it is not necessary that it should be printed upon the ballot; for instance, constitutional amendments are submitted to the people without printing more than a mere indication of the tenor thereof upon the ballot. The section of the constitution under consideration (article XI, section 8½) expressly provides: "The legislature shall enact such general laws as may be necessary to carry out the provisions of this section and such general or special laws as may be necessary to carry out the provisions of subdivisions 5 and 6 of this section, . . ." In the constitutional provision providing for the initiative and referendum (art. IV, sec. 1), the Secretary of State is required to

submit to the electors for their approval or rejection the initiative or referendum matters, but the form of the ballot by which they are to be submitted is not provided therein. It is further provided: "This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved." The form of ballot is in the control of the legislature. (*Haskell* v. *City of Long Beach*, 153 Cal. 543, [96 Pac. 92].) I therefore conclude that the city authorities, having pursued the method indicated by the legislature for ascertaining the will of the voters and the voters having expressed their will in the form provided by law, that the annexation of Sawtelle to Los Angeles has been effected and that the territory within the former boundaries of Sawtelle is liable to be assessed with other property within the city of Los Angeles for that portion of the indebtedness set out in the notice of election.

Rehearing denied.

All the Justices concurred, except Shaw, J., and Wilbur, J., who were absent.