BIJOU AMUSEMENT Co. *et al. vs.* FELIX A. TOUPIN *et al.*

DECEMBER 14, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is a petition for a writ of *certiorari* brought by the petitioners, operators of motion picture theatres in the city of Woonsocket, to review the action of the board of police commissioners of that city in establishing a license fee for theatre performances in Woonsocket. The writ was issued. In response to the writ, the respondents, the members of the board of police commissioners, herein-

after called the board, and the city treasurer, have made a return of the proceedings in issue and the records in question are now before us.

The petition alleges substantially that previous to January 12, 1939, the required license fee from each operator of a motion picture theatre in Woonsocket was $1 for each performance on week days and $1 for a performance on Sundays; that, on said date, the board voted that such license fees in the future should be $2 for each performance from Monday to Friday inclusive, and $5 for performances on Saturdays and Sundays. The petition then alleges that this action by the board is a clear abuse of the discretion vested in it by general laws 1938, chapter 362, §2, in that "the license fee is greatly in excess of the cost of licensing and regulating the theatres, including the necessary expenses attendant upon the issuance of a theatre license and the necessary inspection, regulation and supervision." The petition further alleges that the action of the board in charging such fees constitutes "an arbitrary, confiscatory, prohibitive and unauthorized tax upon private enterprise for the purpose of raising revenue", which purpose is not contemplated by said chap. 362.

The prayer of the petition is that the record in question be quashed; that this court set an amount "which is a reasonable sum for the payment of a theatre amusement license;" that the board be held to account for the overcharges, and that the city treasurer be ordered to pay over to the petitioners the sum determined to have been illegally assessed.

General laws 1938, chap. 362, entitled "Licensing and Regulation of Shows and Exhibitions", sets forth the conditions and regulations under which various kinds of amusement enterprises, such as theatrical performances, dances or balls, boxing, wrestling matches and roller skating, may

be held in the cities and towns of this state. The statute in so far as pertinent is as follows: "§1. No person shall publicly or for pay or for any profit or advantage to himself, exhibit or promote or take part in any theatrical performance, . . . or other show or performance . . ." without first securing a license for such performance, under penalty, as provided in §4, of a fine not exceeding $500 or imprisonment not exceeding one year, or both such fine and imprisonment.

By §2 of this enabling statute, the licensing power, which the legislature saw fit to grant to its municipalities, is vested in the town councils of towns and in the board of police commissioners of cities. It provides, among other things, that: "Said town council . . . or board of police commissioners *shall demand and receive* of every person to whom a license shall be granted under this chapter such sum not exceeding $100.00 for any single performance . . . ." (italics ours) In its entirety, §5 is as follows: "All sums received for licenses as aforesaid shall be paid, one-half thereof to the town treasurer for the use of the town and one-half thereof to the general treasurer for the use of the state."

According to the records in the instant case, the board, on January 12, 1939, voted that: "Theatre License fees are to be $4. per day from Monday to Friday inclusive, and $5 for Saturdays, and $5 for Sunday. . . . To take effect January 15, 1939." On January 26, 1939, the board voted "for the purpose of clarification" that "the fees to be paid by Theatres, is stipulated as follows: $2. for each performance which is not a so-called continuous performance, and $5. for a so-called continuous performance such as is now conducted on Saturdays and Sundays, said continuous performance to require a fee of $5. no matter on what day they are held. All performances on Saturday or Sundays by Theatres no matter of what duration, shall require a fee of $5."

It is obvious that this second vote of the board was to comply more strictly with the terms of the statute. No ob-

jection is raised by the petitioners to the form of such action. They insist, however, that the board in fixing the above-mentioned fees clearly abused the discretion vested in it by the statute, and that the board's action is, in effect, the imposition of a tax without warrant of law on motion picture theatres under the guise of a license fee. We do not agree with these contentions.

The only question presented in these proceedings on the record before us, by which we are bound, is the power of the board under chap. 362. Did the board have the power to fix the fees for theatrical performances that it did fix by its action of January 12 and 26, 1939, respectively?

The statute here involved was the subject of serious consideration by this court in the recent case of *Thayer Amusement Co.* v. *Moulton,* 63 R. I. 182, 7 A. 2d 682. It is unnecessary for us to repeat here what we said in that opinion as to the validity, nature and purpose of the statute. In that case we held that the enterprises specified in the statute, which plainly include shows and theatrical performances, were "subject to regulation and even prohibition under the police power of the state" and that "a license to show motion pictures publicly for a price is necessarily a mere privilege and not in any sense a right of property."

With this decision as a background, we will now consider the petitioners' claim in the instant case. Their contention assumes that the purpose of chap. 362 is mere regulation, and they cite texts in support of such contention which deal with the "useful employments" of life. With this as a basis, they conclude that the license fee which the licensing authorities may legally demand in this case must be limited and reasonably measured by the necessary or probable expenses of issuing the license and of supervision.

Chapter 362 is not directed at the useful businesses, trades or occupations by means of which the individual ordinarily

gains a livelihood. The statute deals with a class of enterprises which the legislature, in the exercise of its police power, deemed might be harmful to public morals, or endanger public safety through accidents or disorder, and which it therefore authorized the respective municipalities to regulate even to the point of prohibition. Through chap. 362, the legislature has granted to the licensing authorities of the respective municipalities the power to determine for themselves what shows or performances, open to the public upon payment of admission fees, may be given within their respective territorial limits; and further, what license fees, "not exceeding $100.00 for any single performance", the licensing authorities shall "demand and receive" for the privilege of giving such shows or performances. See *Standard Athletic Club* v. *Cushing,* 30 R. I. 208. In these circumstances, the texts and decisions relied upon by the petitioners are inapplicable.

The problems of government, especially when they concern the public morals and safety, present difficult situations. It is not for us to determine the wisdom of an act of a duly empowered governmental agency or authority when acting in an administrative capacity and within the scope of powers that we cannot say are clearly arbitrary or unreasonable. This is the situation in the instant case. Our duty in these proceedings is "to construe the statute, not to redraft it." See *Moretti* v. *Division of Intoxicating Beverages,* 62 R. I. 281, 5 A. 2d 288.

To support their contention that under chap. 362 the license fee for shows and theatrical performances should not exceed the actual cost to the municipality of issuing the license and of reasonable supervision, the petitioners argue that regulation alone, rather than regulation and revenue, is the purpose of the statute. They arrive at this conclusion by confining themselves solely to the provisions of §2 of the statute, completely disregarding, without justification, the

provisions of §5, which we already have quoted in full. It is a primary rule of statutory construction that all pertinent provisions in a statute must be given effect, if reasonably possible, so that no part will become inoperative. The intent of the legislature is to be gathered from the statute, taken as a whole, and not merely from a part thereof without reference to other clearly expressed and controlling provisions.

We agree with the authorities cited by the petitioners to the effect that a municipality has no power to raise revenue by taxation unless such power is clearly granted to it by the legislature. We find, however, that such power is so granted in §§2 and 5 of chap. 362. When §5 is read together with §2, it is clear to us that the sum which the municipal authorities "shall demand and receive" as a license fee is a tax in the nature of an excise on the particular enterprises named in the statute, which sum is required to be divided equally between the city and the state. Therefore, regulation and revenue, for both state and municipality, rather than regulation alone, as the petitioners contend, is contemplated by chap. 362.

For the above reasons, the writ of *certiorari* heretofore issued is quashed.

*John R. Higgins, Edward F. Dwyer,* for petitioners.

*John J. Mee,* City Solicitor, for respondents.