[L. A. No. 21399.   In Bank.   Oct. 6, 1950.]

FOX BAKERSFIELD THEATRE CORPORATION (a Corporation) et al., Appellants, v. CITY OF BAKERSFIELD, Respondent.

Borton, Petrini & Conron, James Petrini, O'Melveny & Myers, Jackson W. Chance and William W. Alsup for Appellants.

J. Kelly Steele, City Attorney, West, Vizzard & Baker and James Vizzard for Respondent.

CARTER, J.—In an action for declaratory relief, injunction and recovery of taxes paid under protest by plaintiffs, operators of motion picture theatres, the trial court determined that a business license tax levied by defendant city and affecting them was valid. The attack on defendant's tax ordinance includes the charges of discrimination, double taxation, and defective enactment.

The city has had for many years a basic business license tax ordinance, No. 681, which levies a tax for the purpose of revenue rather than regulation. It reaches practically every kind of business conducted in the city. Detailed classifications are made of various kinds of business. In some the license fee is a flat sum and in others is graduated according to the income from the business, or on some other basis. Among those businesses are theatres taxed by section 56 (the same section also includes other things, such as amusement games). The tax on theatres is $104 per annum for 300 seats or less, and $8.00 for each 100 seats or fraction thereof over 300. Plaintiffs do not question the validity of that tax.

In 1946, an ordinance was adopted which imposed one cent per admission tax on theatres. That ordinance was repealed, and in 1947, an initiative ordinance was adopted, as No. 754, the one here questioned. It is a license tax ordinance for revenue requiring that a license shall be obtained "by all persons maintaining places of or furnishing amusement or entertainment in the City. Places of amusement or entertainment shall include theatres, shows, games, carnivals, spectacles, exhibitions, dances, and other performances; furnished or provided at any place or by any person as to which a charge, admission fee, or other sum is required to be paid, whether wholly or partially, for the privilege of seeing, witnessing, being present at, engaging or participating in singly or with another person, or for otherwise being diverted, amused, or entertained." The tax imposed is 1 cent "for each 10 cents or fraction of 10 cents over and above the first 15 cents of the amounts charged and paid for admission to any place, including admission by season ticket or subscription; and 1 cent for each ten cents or fraction of 10 cents

over and above the first 15 cents of all sums received from fees and charges after the payment of an admission fee, for the use of property, equipment or facilities within, upon or about any place of amusement or entertainment which is charged and collected by the operator of such place over or above, or as a part of the amount charged for admission to such place;

"(b) 1 cent for each 10 cents or fraction of 10 cents over and above the first 15 cents of amounts charged and received by the operator of any place of amusement, where no admission fee is charged, for the use or operation of property, equipment and/or facilities, and/or the privilege of being in or upon such place of amusement. . . ." The tax is on the privilege of conducting such places of business but shall be collected from the customer. The tax imposed is expressly made in addition to, rather than in lieu of, any other taxes. Hence it is in addition to the general business tax license ordinance No. 681 above mentioned. Where refreshments, food or services are dispensed at any roof garden, cabaret, café, restaurant or hotel, or the like, and there is furnished public performance, floor show, dance floor, or other amusement, then it is deemed that 20 per cent of the amount paid by the customer is for entertainment and a tax of 1 cent on each 15 cents of such 20 per cent is levied (§ 8(c)). Billiard tables, pool tables and arcades where no admission fees are charged, are exempted from the tax. (§ 8(b).) Also exempted are admission fees for entertainment charged by charitable, religious and educational organizations, and those producing nonprofit symphony concert programs (§ 9(a)); the furnishing of music alone by musicians or mechanically without an admission charge (§ 9(c)); and, in the sale of alcoholic beverages and such beverages as are not included in the refreshments covered by section 8(c) unless the charge therefor is included without segregation in the customer's bill.

Invoking the United States Constitution equal protection mandate (U. S. Const., 14th Amend.) and similar guarantees under the state Constitution, such as uniformity and equality of operation of laws (see Cal. Const., art. I, §§ 11, 21; art. IV, § 25(19) (20) (33)), plaintiffs assert that the tax levied by ordinance No. 754 is discriminatory and not based upon any proper classification.

Preliminarily, it should be observed, in connection with plaintiffs' assertion that as a result of ordinance No. 754, they bear and pay a large proportion of the business license taxes levied and collected by the city and a major share of the amuse-

ment business taxes, that the amount of taxes paid by them standing alone is not a ground for invalidating the tax, at least unless it reaches the confiscatory or prohibitory point or completely refutes any basis for a classification. Plainly there is discrimination in the taxes imposed by ordinance No. 754 for it does not apply to all businesses operated in the city. That premise also embraces the fact that plaintiffs bear a greater burden of the taxes than other businesses. The issue is one of whether the classification made by ordinance No. 754 is proper. ■ The law is not, as plaintiffs suggest, that there is a requirement of reasonableness of amount of excise taxes levied for revenue by a municipal corporation in addition to the restrictions imposed by the uniformity and equal protection provisions of the Constitution. Assuming there is power to impose the tax (such power is not questioned here) under the charter, if it is a charter city, or under the statutes, if it is not, the only restrictions on the exercise of that power are the Constitution, charter, or statutes, as the case may be, or as expressed in *Rancho Santa Anita* v. *City of Arcadia,* 20 Cal.2d 319, 322 [125 P.2d 475], dealing with a noncharter city: "The taxing power of the city and all limitations thereon are derived from the Constitution and statutes." It follows, therefore, that short of being confiscatory or prohibitory, there is no rule of law that requires that a tax be reasonable in amount, for the power of taxation is a vital legislative function (*Watchtower B. & T. Soc.* v. *County of Los Angeles,* 30 Cal.2d 426 [182 P.2d 178]), and there can be no basis for a court to invalidate an exercise of that power other than the Constitutions, state or federal. It has been so held. (See *Fox* v. *Standard Oil Co.,* 294 U.S. 87 [55 S.Ct. 333, 79 L.Ed. 780]; *Patton* v. *Brady,* 184 U.S. 608 [22 S.Ct. 493, 46 L.Ed. 713]; *F. Couthoui Inc.* v. *United States,* 54 F.2d 158, cert. denied 285 U.S. 548 [52 S.Ct. 396, 76 L.Ed. 939]; *Alexander Theater Ticket Office* v. *United States,* 23 F.2d 44; Cooley on Taxation (4th ed.) § 72, p. 181; *Sunset Nut Shell Co.* v. *Johnson,* 49 Cal.App.2d 354, 357 [121 P.2d 849]; *City of Crescent City* v. *Moran,* 25 Cal.App.2d 133, 136 [77 P.2d 281]; *Roth Drug, Inc.* v. *Johnson,* 13 Cal.App.2d 720 [57 P.2d 1022]).

Correctly interpreted, cases such as *Hansen* v. *Town of Antioch,* 18 Cal.2d 110 [114 P.2d 329], and the cases there cited, involving a different license tax for itinerant peddlers than that for persons with a fixed place of business, are not to the contrary. In the Hansen case, the court stated that a distinction may be drawn between such merchants, and that

the rate of the tax must be reasonable, but what is meant is, that such tax must not be unconstitutionally prohibitory, confiscatory, or discriminatory, and it cannot be upheld under the taxing power, when it is, in reality, merely an exercise of the police power to exclude such peddlers. That is to say, if the Constitution forbids the prohibition of such merchants, then that result cannot be achieved indirectly by imposing a destructive tax upon them.

Plaintiffs' contention that a double tax has been laid upon them should be first disposed of. As seen from the ordinance, they pay the tax that is levied on all businesses and, in addition, that levied by ordinance No. 754. It is conceded that both taxes are excise rather than property taxes. ■ Taxation, other than of property, upon the same activity or incident for the same purpose by the same taxing agency, more than once in the same period, sometimes called double taxation, standing alone, is not forbidden by the Constitutions, state or federal. (*Ingels* v. *Riley*, 5 Cal.2d 154 [53 P.2d 939, 103 A.L.R. 1]; see *Dougles Aircraft Co.* v. *Johnson*, 13 Cal.2d 545 [90 P.2d 572]; *Flynn* v. *City and County of San Francisco*, 18 Cal.2d 210 [115 P.2d 3]; *Illinois C. R. Co.* v. *Minnesota*, 309 U.S. 157 [60 S.Ct. 419, 84 L.Ed. 670]; *Baker* v. *Druesedow*, 263 U.S. 137 [44 S.Ct. 40, 68 L.Ed. 212].) It is a factor in determining whether the tax is invalidly discriminatory when it is levied upon some activities but not others, or it may pose a question of substantive due process if its imposition assumes confiscatory or prohibitory characteristics.

Section 102 of the Revenue and Taxation Code (formerly Pol. Code, § 3607) states that nothing in that "division" shall be construed to permit double taxation but that "division" deals solely with property taxes. Our Constitution provides that "all property" in the state except as otherwise provided "shall be taxed in proportion to its value." (Cal. Const., art. XIII, § 1) And under that provision it has been held that there could be no double taxation of *property*. (See *Germania Trust Co.* v. *San Francisco*, 128 Cal. 589 [61 P. 178]; *People* v. *Badlam*, 57 Cal. 594; *San Francisco* v. *Anderson*, 103 Cal. 69 [36 P. 1034, 42 Am.St.Rep. 98]; *Estate of Fair*, 128 Cal. 607 [61 P. 184]; *Morgan Adams Inc.* v. *Los Angeles County*, 209 Cal. 696 [289 P. 811]; *Flynn* v. *San Francisco*, 18 Cal.2d 210 [115 P.2d 3]; *Redwood Theatres* v. *City of Modesto*, 86 Cal.App.2d 907 [196 P.2d 119]; *Bank of California, Nat. Assn.* v. *Roberts*, 173 Cal. 398 [160 P. 225]; *Spring Valley Water Co.* v. *County of Alameda*, 24 Cal.App. 278 [141 P. 38]; *Napa Sav. Bank* v. *County of Napa*, 17 Cal.App.

545 [120 P. 449]; *cf. Weber* v. *County of Santa Barbara,* 15 Cal.2d 82 [98 P.2d 492]; 8 S.Cal.L.Rev. 79.) The distinction between property and other taxes with relation to double taxation is clearly stated in *Ingels* v. *Riley, supra,* 5 Cal.2d 154, 164: "It is also urged that the act is unconstitutional for the reason that, when read with the provisions of the Vehicle Code, *supra,* double taxation is imposed by the same taxing agency on the same privilege. It is contended that this violates the Constitution, although no provision of either the federal or state Constitution is specifically referred to. This argument is based on the fact that the Vehicle Code, *supra,* section 370, imposes upon all motor vehicle owners as defined in the act, an annual fee of $3.00. There is no merit in this contention. The mere fact that the state has imposed one excise under one act does not prevent the state from imposing another excise upon the same privilege for the same period. Article XIII, section 1, of the state Constitution, has no application, because that section applies only to property taxes." (See, also, *Redwood Theatres* v. *City of Modesto, supra; City of Los Angeles* v. *Riley,* 6 Cal.2d 621 [59 P.2d 137, 106 A.L.R. 903]; *Douglas Aircraft Co.* v. *Johnson,* 13 Cal.2d 545 [90 P.2d 572].)

This brings us, therefore, to the question that, inasmuch as the tax imposed is not on all businesses in the city, has there been made a proper constitutional classification of the businesses taxed, or is there a violation of the uniformity and equal protection requirements of the Constitutions.

Plaintiffs assert that the classification is improper because it does not include all amusement businesses in the city and that they bear a major share of the taxes assessed against amusements. It will be remembered that exemptions are made of pool halls and arcades where admissions are not charged, certain religious, charitable, and educational affairs, where music alone is furnished without admission charge.

We do not think the city overstepped constitutional limitations in its classification. It must be remembered that, as aptly expressed in speaking of the state sales tax, by the court in *Roth Drug, Inc.* v. *Johnson,* 13 Cal.App.2d 720, 733 [57 P.2d 1022]: "The power of the states to make classifications of persons or property for the purpose of taxation is very broad . . . A statute is presumed to be constitutional until the contrary appears. It has been said that an act may not be held to be unconstitutional merely because it may contain provisions which seem to be unjust or oppressive, or be-

cause it may be deemed to violate the natural, social, or political rights of citizens, unless it appears that those features of the act contravene rights which are guaranteed by the Constitution. (1 Cooley's Constitutional Limitations, 8th ed., p. 341.) If a classification of persons or occupations made for the purpose of imposing taxes is founded on natural, intrinsic or fundamental distinctions which are reasonable in their relation to the object of the legislation and otherwise, they will be deemed to be valid and binding. (5 Cal.Jur., p. 824, sec. 188) . . . While the classification should be reasonable, natural and just, in the absence of a showing to the contrary, it will be assumed there are good grounds for the classification, and the act will be upheld. (6 R.C.L., p. 378, secs. 369-376) In the case of *People* v. *Monterey Fish Products Co.*, 195 Cal. 548, 556 [234 P. 398, 401, 38 A.L.R. 1186], it is said in that regard: 'When a legislative enactment is attacked upon this ground—of an unauthorized classification—all presumptions and intendments are in favor of the reasonableness and fairness of the legislative action (5 Cal.Jur., sec. 628 et seq., and cases cited), and the decision to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary.' "

It is well settled that occupations and businesses may be classified and subdivided for purposes of taxation, and it is within the discretion of the Legislature to exact different license taxes from different classes or subclasses of businesses, subject only to the limitations of the state and federal Constitutions in regard to equal protection of the laws. ■ No constitutional rights are violated if the burden of the license tax falls equally upon all members of a class, though other classes have lighter burdens or are wholly exempt, provided that the classification is reasonable, based on substantial differences between the pursuits separately grouped, and is not arbitrary. (1 Cooley, Taxation, 4th ed., pp. 746-751; 53 C.J.S. pp. 532-538; 33 Am.Jur., pp. 353-363; *Quong Wing* v. *Kirkendall*, 223 U.S. 59 [32 S.Ct. 192, 56 L.Ed. 350]; *Northwestern Mut. Life Ins. Co.* v. *Wisconsin*, 247 U.S. 132 [38 S.Ct. 444, 62 L.Ed. 1025]; *State Tax Commissioners* v. *Jackson*, 283 U.S. 527 [51 S.Ct. 540, 75 L.Ed. 1248]; *Liggett Co.* v. *Lee*, 288 U.S. 517 [53 S.Ct. 481, 77 L.Ed. 929, 85 A.L.R. 699]; *Fox* v. *Standard Oil Co.*, 294 U.S. 87 [55 S.Ct. 333, 79 L.Ed. 780]; *Ex parte Haskell*, 112 Cal. 412, 417 [44 P. 725, 32 L.R.A. 527]; *Ex parte Lemon*, 143 Cal. 558, 562 [77 P. 455, 65 L.R.A. 946]; *Bramman* v. *City of Alameda*, 162 Cal.

648, 653 [124 P. 243]; *Los Angeles etc. Co.* v. *Los Angeles,* 163 Cal. 621, 627 [126 P. 594].) The general rule has been recognized in cases where the particular ordinance or statute was held invalid. (See *Matter of Application of Richardson,* 170 Cal. 68 [148 P. 213]; *Town of St. Helena* v. *Butterworth,* 198 Cal. 230 [244 P. 357]; *Bueneman* v. *City of Santa Barbara,* 8 Cal.2d 405, 411 [65 P.2d 884, 109 A.L.R. 895]; *Barker Bros., Inc.* v. *Los Angeles,* 10 Cal.2d 603, 607 [76 P.2d 97].)

Following these principles, it has been generally held or stated that legislation separately classifying places of amusement for the purpose of imposing license taxes on the owners or operators of them as a group, is valid. (See *Hale* v. *State,* 217 Ala. 403 [116 So. 369, 58 A.L.R. 1333]; *Nachman* v. *State Tax Commission,* 233 Ala. 628 [173 So. 25]; *City of Bessemer* v. *Bessemer Theatres,* 252 Ala. 117 [39 So.2d 658]; *Pellicer* v. *Sweat,* 131 Fla. 60 [179 So. 423]; *City of Miami* v. *Kayfetz,* 158 Fla. 758 [30 So.2d 521]; *Veterans' Foreign Wars* v. *Hull,* 51 N.M. 478 [188 P.2d 334]; *Curdts* v. *South Carolina Tax Commission,* 131 S.C. 362 [127 S.E. 438] (affirmed in memo. opinion, 273 U.S. 669 [47 S.Ct. 471, 71 L.Ed. 831]); *Knoxtenn Theatres* v. *Dance,* 186 Tenn. 114 [208 S.W.2d 536]; *Ringling Bros.-Barnum & Bailey C. Shows* v. *Sheppard* (C.C.A. 5, 1941), 123 F.2d 773.)

Similarly, it has usually been held that the amusement industry might be further subdivided, so that moving picture theatres could be taxed as a separate subclass. (*Metropolis Theater Co.* v. *Chicago,* 228 U.S. 61 [33 S.Ct. 441, 57 L.Ed. 730]; *Brandenburg* v. *City of Covington,* 153 Ga. 92 [111 S.E. 574]; *City of Metropolis* v. *Gibbons,* 334 Ill. 431 [166 N.E. 115]; *State* v. *Greene,* 104 Mont. 460 [67 P.2d 995, 111 A.L.R. 770]; *City of Drumright* v. *Strand Amusement Co.,* 139 Okla. 162 [282 P. 128]; *Bijou Amusement Co.* v. *Toupin,* 63 R.I. 503 [9 A.2d 852]; *Wingfield* v. *South Carolina Tax Commission,* 147 S.C. 116 [144 S.E. 846]; *Davis* v. *White,* (Tex.Civ.App., 1924), 260 S.W. 138; *North Fort Worth Amusement Co.* v. *Card,* (Tex.Civ.App., 1930), 23 S.W.2d 778.) While the question does not appear to have been authoritatively decided in this state, it was said by way of dictum in *Redwood Theatres* v. *City of Modesto,* 86 Cal.App. 2d 907, 918 [196 P.2d 119], that there was no doubt of the propriety of separately classifying places of amusement for the purpose of taxation. The case was actually disposed of on a point of pleading, but the statement appears to be sound and in accord with the weight of authority elsewhere.

Whether the tax statute may make a valid exemption presents the same problem as that of classification; if the exempted persons or businesses may be included in a distinct class then the equal protection of the laws is not denied to those taxed. (33 Am.Jur. 363.) Provisions excluding entertainments given for charitable purposes from theatre license taxes have generally been upheld. (*Pellicer* v. *Sweat, supra;* *Curdts* v. *South Carolina Tax Commission, supra;* *Ringling Bros.-Barnum & Bailey C. Shows* v. *Sheppard, supra.*)

■ Those principles compel the conclusion that the instant classification is proper. We cannot substitute our judgment for that of the city's legislative power and conclude that there was no conceivable basis for the classification such as the nature and character of the amusement business and of those in that business taxed as distinguished from those exempted. Among other things, one of the main features of the tax is that it is imposed on those amusement businesses charging admission, and those taxed are the ones where larger groups of people are likely to gather, with the accompanying effects on the functioning and activities of the government.

■ Finally it is urged that the proposition stated on the ballot used in the election at which initiative ordinance No. 754 was adopted was "so misleading, as to invalidate" the ordinance; that the ordinance levied two taxes, one of 1 cent for each 10 cents admission over the first 15 cents admission charge and the other of 1 cent on each 15 cents of 20 per cent of amounts charged for food refreshment, etc., with entertainment, but only the first was mentioned in the ballot. The proposition on the ballot reads: "Proposition No. 1: Shall an ordinance entitled An Ordinance Licensing the Carrying On Of Certain Businesses, Occupations, and Callings and Conduction, Operating, Providing And Maintaining Places of Amusement and Entertainment in The City of Bakersfield for The Purpose of Raising Municipal Revenue and Providing Penalties For the Violation Of The Provisions Hereof which imposes a license tax of one cent for each 10 cents or fraction of 10 cents over and above the first 15 cents of amounts paid by the patrons of places of amusement or entertainment, for the privilege of conducting such places of amusement or entertainment, and which provides that such tax shall be collected by the operators of such places from the persons patronizing such places, be adopted?" The city charter provides: "The ballots used when voting upon such [initiative petition] ordinances shall give the title in full and

. . ." (Charter of Bakersfield, § 28) but it also provides: "No informalities in conducting elections shall invalidate the same, if they have been conducted fairly and in substantial conformity to the requirements of this charter and the ordinances relating thereto," (Charter, § 85) which means that substantial compliance is all that is required. It has been repeatedly and recently held that in testing the sufficiency of the summary in petitions for an initiative measure where the law requires "a title and summary of the chief purpose and points" of the measure (Cal. Const., art. IV, § 1), substantial compliance is sufficient. (*Perry* v. *Jordan,* 34 Cal.2d 87 [207 P.2d 47]; *Brown* v. *Jordan,* 12 Cal.2d 75 [82 P.2d 450]; *Epperson* v. *Jordan,* 12 Cal.2d 61 [82 P.2d 445]; *California Teachers' Assn.* v. *Collins,* 1 Cal.2d 202 [34 P.2d 134]; *Boyd* v. *Jordan,* 1 Cal.2d 468 [35 P.2d 533].) We consider the rule announced in the last cited cases controlling here.

Here the main and general purpose of the initiative was the imposition of a tax on amusement businesses. That is adequately covered in the title of the ordinance stated on the ballot. The mention of the method of computing the tax as to some businesses but not others was merely incidental or auxiliary and may be disregarded. As said in *Brown* v. *Jordan, supra,* 84: "If it be conceded that after disclosing the chief purpose and points of the proposal, the title contains references to some provisions of the proposal no more important than some to which reference was omitted, this does not render the title fatally defective. The title need not contain a summary or index of all of the measure's provisions. Within certain limits what is and what is not an important provision is a question of opinion. Within those limits the opinion of the attorney-general should be accepted by this court." There was substantial compliance here. *People* v. *City of Los Angeles,* 187 Cal. 56 [200 P. 947], is readily distinguishable. There the very important feature of whether by annexation the annexed property would assume the annexing city's debts was omitted.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.

Appellants' petition for a rehearing was denied November 2, 1950.